COMMONWEALTH *vs.* ANIVEL J. GOMES.

Suffolk.    February 3, 1969. — March 11; 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Sex Offender. Evidence,* Opinion: expert; Sex offender. *Practice, Civil,* Sex offender, Assistance of counsel. *Notice. Constitutional Law,* Due process of law, Equal protection of laws, Sex offender, Double jeopardy. *Res Judicata.*

At the hearing of a petition by a District Attorney under G. L. c. 123A, § 6, for commitment of a prisoner to a treatment center for sexually dangerous persons, the opinion of the two psychiatrists who had examined and diagnosed the prisoner during his sixty day commitment to the center, that he was a sexually dangerous person, and the psychiatrists' statutory report stating the same conclusion, were rightly admitted in evidence where there was sufficient other evidence to warrant the same conclusion by the judge; the psychiatrists' opinion did not usurp the function of the judge as a fact finder and was not too inexact a concept to be of help to him. [481–483]

Commitment of a prisoner to a treatment center for sexually dangerous
persons for sixty days examination and diagnosis pursuant to G. L.
c. 123A, § 6, upon motion of the superintendent of the correctional
institution in which the prisoner was serving his sentence did not
violate his constitutional right to due process of law in that the mo-
tion was allowed forthwith by the court without notice and without
a hearing and in the absence of counsel. [483–485]

A decision by a trial judge after a hearing pursuant to G. L. c. 123A, § 5,
that the defendant, who had been found guilty of assault with intent
to rape and whom the judge had committed to a treatment center for
sexually dangerous persons for sixty days pursuant to § 4, should not
be committed to such center for an indefinite period, as was per-
missible, but should be sentenced to a correctional institution for a
term of years, did not adjudicate that the defendant was then not a
sexually dangerous person, and did not bar on the ground of res
judicata a subsequent commitment of the defendant as a sexually
dangerous person to a treatment center for an indefinite period pur-
suant to § 6, even though the evidence at the hearings under §§ 5
and 6 was substantially the same except that at the later hearing there
was evidence that the defendant had not engaged in any sexual mis-
conduct while imprisoned. [485–486]

A defendant convicted of a crime was not placed in double jeopardy by
a subsequent commitment of him under G. L. c. 123A, § 6, to a treat-
ment center for sexually dangerous persons for an indefinite period
[486]; nor was the defendant denied equal protection of the laws in
that he had not engaged in any misconduct in sexual matters while
in prison [486].

PETITION for commitment filed in the Superior Court on
May 16, 1967.

The defendant alleged exceptions following a hearing and
order for commitment by *Tauro*, C.J.

*Reuben Goodman* (*Robert A. Novick* with him) for the de-
fendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney, for
the Commonwealth.

WHITTEMORE, J. The defendant presents exceptions in
respect of proceedings under G. L. c. 123A, § 6, which re-
sulted in an order, on December 20, 1967, committing him
to the treatment center for sexually dangerous persons at
Bridgewater for a period from one day to life.

On February 1, 1962, the defendant was found guilty in the
Superior Court of Suffolk County of assault with intent to
rape. The trial judge on his own motion then committed

the defendant, pursuant to c. 123A, § 4, to the treatment center for sixty days for examination and diagnosis. A hearing was held before the trial judge on May 25, 1962, pursuant to c. 123A, § 5. Two psychiatrists who had examined the defendant testified. At the close of the hearing, the trial judge declined to commit the defendant to the treatment center as the statute permits and sentenced him to serve a term of three to ten years at the Massachusetts Correctional Institution at Walpole (Walpole). The defendant's sentence expired on November 15, 1967.

The present proceedings began on March 15, 1967, when the superintendent of the Massachusetts Correctional Institution at Norfolk, to which the defendant had been transferred, filed a motion under § 6 to commit him to the treatment center for sixty days for examination and diagnosis. The motion was forthwith allowed without a hearing. The defendant as a result was examined at the treatment center by the same psychiatrists as before. Their report diagnosed him as a sexually dangerous person. The present petition based on that report was filed on May 16, 1967, counsel was appointed for the defendant on May 22, 1967, and the hearing was held on November 30 and December 15 and 20, 1967. At the hearing, the same psychiatrists testified that in their opinion the defendant was a sexually dangerous person.

Prior to the hearing, the defendant filed (with substantially the same allegations of fact in each) a motion to dismiss, an answer in bar, and an answer in abatement, all of which were denied. Certain of his requests for rulings were also denied. Exceptions were taken to all these denials. We deal with all the substantive issues raised by the exceptions.

1. The defendant contends that it was error to permit the two psychiatrists to testify to their opinion that he was a sexually dangerous person and to receive in evidence the report filed by them under the statute stating that conclusion. Although exceptions were saved when this evidence was received, there is in the bill an applicable stipulation:

"The parties agree that the evidence in this case is substantially the same as the evidence at the hearing before . . . [the sentencing judge] on May 25, 1962. The evidence before . . . [the sentencing judge] warranted a finding that the . . . [defendant] was a 'sexually dangerous person' within G. L. c. 123A, § 1." No reservation is implicit that this was evidence that should not have been received. The question at the 1967 hearing was whether there was evidence before the committing judge that permitted the finding that the defendant was within the statutory category. The stipulation may reasonably be taken to answer that question. We discern, in any event, no error in the judge's rulings bringing before him the report and the opinion. The statute provides for wide latitude in the use of the observations and conclusions recorded by others. *Commonwealth* v. *McGruder,* 348 Mass. 712, 715, cert. den. 383 U. S. 972.

The defendant urges that allowing experts to give their opinion on the ultimate issue substitutes them for the judge. In *Commonwealth* v. *DeSalvo,* 353 Mass. 476, 481 we noted the importance of a full description of the affliction and its effect on conduct, so that the conclusion of the expert in the terms of the test itself will not usurp the fact finder's function. See also *Washington* v. *United States,* 390 F. 2d 444, 453–454 (Ct. App. D. C.); Goldstein, The Insanity Defense, 97–105; Strickman, The Insanity Defense in Massachusetts: Some Unresolved Problems, 53 Mass. L. Q. 195, 201–203. Careful and full instructions in jury trials and, in cases under c. 123A, the judge's understanding of his responsibility provide additional safeguards.

In our recent cases we have reaffirmed that, at least in the presence of such evidence, the expert may give his own conclusions in the terms of the test — whether the fact finder is a judge (*Commonwealth* v. *Peterson,* 348 Mass. 702, 705, cert. den. 384 U. S. 909 [case under c. 123A, § 6]), or a jury. *Commonwealth* v. *Chapin,* 333 Mass. 610, 625, cert. den. 352 U. S. 857. *Commonwealth* v. *McHoul,* 352 Mass. 544, 554. See *Commonwealth* v. *Gardner,* 350 Mass. 664, 666; *Commonwealth* v. *Francis, ante,* 108.

In the case before us there was sufficient evidence of what underlay the physician's conclusions and this was evidence on which the judge could act.[1]

The defendant, in effect, asks for reconsideration of our holdings in the light of the *Washington* case, *supra,* in which the Federal court, moving from the full effect of its so called *Durham* rule, now declines to allow the expert to state his ultimate conclusion. The defendant urges also that the concept "sexually dangerous person" is inexact and without medical significance for psychiatrists. See Lindman and McIntyre, The Mentally Disabled and the Law, 305–306. It is our view that the conclusions of expert physicians who have observed the conduct of emotionally afflicted persons having a history of aggressive, sexual misconduct can be of help to the judge within the rule of the *Chapin* and *McGruder* cases, *supra.*

2. We turn to the defendant's contention that the absence of notice and of counsel in connection with the temporary commitment of the defendant to the treatment center denied him due process.

The defendant contends, in effect, that c. 123A proceedings, however denominated, must be regarded as criminal (*Specht* v. *Patterson,* 386 U. S. 605), at least to the extent that counsel is required at every stage under the rule of *Gideon* v. *Wainwright,* 372 U. S. 335, and later cases. See, for example, *In re Gault,* 387 U. S. 1, 34–42.

In the *Specht* case the court held that a hearing with counsel present was necessary for a proceeding instituted after Specht's conviction for a sexual crime which resulted in his being sentenced under the Colorado Sex Offenders Act. The proceedings were like those held by the sentencing

---

[1] The report stated the Massachusetts sex offence, a like conviction in Connecticut in 1954, and the defendant's hospitalization in a mental hospital in connection with that sentence. Also "Sexual History. Two serious crimes involving sex and both fused with aggression. Otherwise, there is a normal heterosexual status. . . . [W]e have previously stated that he was mentally ill, and in the interim he has spent a good deal of time in mental hospitals. Currently he is in a state of remission, but he remains so only because he is receiving tranquilizing medication. . . . Mental Deficiency. I.Q. 73 . . . Treatment in this case will be difficult because of his mental status."

judge after Gomes' conviction in 1962 [2] and the characterization by the court of the proceedings as criminal does not, as we read the opinion, imply that the preliminary psychiatric examination must be subject to the rule stated in the *Gideon* line of cases that counsel is required at every stage.[3]  In any event, the § 6 proceedings in this case deal with what is to be the defendant's status *after* he has fully served his sentence of punishment.

The only justification for such proceedings is society's concern for the protection of all its members, including the former convict, from the effects of his dangerous conduct under substantially uncontrollable impulses.  There may be no punitive aspects to such confinement.  For the most recent statement of this emphatic rule, see *Commonwealth* v. *Major*, 354 Mass. 666, 668.  The statute (c. 123A, § 9) provides for hearings at least as often as every twelve months to determine fitness for discharge and at any time on the recommendation of two psychiatrists.

We have consistently construed the proceedings to be civil in nature.  *Commonwealth* v. *Page*, 339 Mass. 313, 316–317.  *Commonwealth* v. *Ackers*, 343 Mass. 63.  The due process clause of the Fourteenth Amendment to the Constitution of the United States is applicable in any event. Unquestionably there must be a hearing with notice and counsel to support an order of indefinite commitment. *Rohrer, petitioner*, 353 Mass. 282, 285–286 (c. 123, civil insanity commitment).  We there said as to temporary commitments: "We have no occasion now to consider the validity of the original temporary commitment.  See, however, *Bumpus* v. *French*, 179 Mass. 131, 133–134; *Gardiner* v. *Jardine*, 245 Mass. 274, 277–278; Lindman & McIntyre . . ., The Mentally Disabled and the Law, pp. 37–40;

---

[2] There is no suggestion that counsel was not actively participating at all stages of the 1962 proceedings.

[3] The distinctions between our procedures under G. L. c. 123A, and the Colorado procedures in the *Specht* case were fully considered in *Peterson, petitioner*, 354 Mass. 110, 112–114.  We there observed that c. 123A, § 6, provides for notice, a hearing, and the assistance of counsel, who is entitled to the reports of the examining psychiatrists.  We said: "This is vastly different from the procedure condemned in the *Specht* case."

Kadish, Institutionalizing the Mentally Ill, 9 Western Pol. Q. 93, 113–114."

The defendant while imprisoned was, as an incident of his imprisonment, subject to examination and tests to determine among other things when and under what circumstances, within statutory limits, he would be paroled and how he could be expected to conduct himself when released. The provision for a sixty-day examination of a prisoner under c. 123A, § 6, and a formal report, is a reasonable extension of society's right to such custodial examination. See *Commonwealth* v. *Major*, 354 Mass. 666, 668. Inasmuch as the examination under c. 123A was entirely within the term of imprisonment, the issue before us is not whether some temporary restraint may be allowed without notice and hearing, but, as stated, it is only whether the appointment of counsel and a hearing are required. We hold they are not. There is no more opportunity for the eliciting of incriminating statements than in the course of any examination by psychiatrists preliminary to any civil commitment or within the term of such commitment. Contra, *People* v. *Potter*, 85 Ill. App. 2d 151, 154–156. The statute and our rule reasonably protect the examined person inasmuch as no indefinite commitment can be made without notice and hearing and the opportunity for the aid of counsel. The preliminary examination, like all the other relevant recorded data, is available to aid the court at that hearing to determine if the defendant is a sexually dangerous person.

3. The defendant contends that the 1962 decision by the trial judge not to commit the respondent as a sexually dangerous person is res judicata as to the present petition. It was, as noted, shown by stipulation that the evidence at both hearings was substantially the same except that the defendant had not engaged in any sexual misconduct while imprisoned.

This contention overlooks the circumstance that the issue presented in 1967 was not the issue presented in 1962. In 1962 the judge had the option, not now open, of punishing

the defendant and at the same time protecting society for the time being by confining the defendant in prison. The trial judge might have thought the defendant would be better off at Walpole while such alternative was available. See *Nason* v. *Superintendent of Bridgewater State Hosp.* 353 Mass. 604, 612–613. A criminal sentence given subsequent to a § 5 hearing is not an adjudication that a person is not sexually dangerous. Such a determination establishes only that a criminal sentence was the better alternative at that time. It does not establish the requirements of the public interest under c. 123A after the sentence is served. Compare *Buyarsky, petitioner*, 322 Mass. 335, 339. We rule that the 1962 proceedings did not adjudicate the question before the court in 1967.

4. The defendant contends that he has been subjected to double jeopardy. That there is no merit in this contention is shown by *Commonwealth* v. *Dagle*, 345 Mass. 539, 541, cert. den. 375 U. S. 863. "The defendant is not being subjected to a second, or any, penalty for the offences for which he was convicted." *Id.* at 541.

5. We hold that commitment pursuant to § 6 does not deny equal protection of the laws even though the defendant has not engaged in any misconduct in sexual matters while in prison. "It is not unreasonable for the Legislature to prescribe procedures leading to reasonable investigation of suspected persons within the group [of prisoners] and to segregation and cure, if possible, of those found to be afflicted." *Commonwealth* v. *Major*, 354 Mass. 666, 668. The general justification of § 6 does not require that, in the particular case, evidence of sexual misconduct be adduced. *Commonwealth* v. *Peterson*, 348 Mass. 702, 703–704.

*Exceptions overruled.*