COMMONWEALTH *vs.* RICHARD C. TRAVIS.

Middlesex.    December 8, 1976. — March 25, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Sex Offender.   Practice, Civil,* Sex offender.   *Constitutional Law,* Sex
offender, Due process of law.

An individual committed to a treatment center as a sexually dangerous
person pursuant to G. L. c. 123A, § 4 or § 6, and subsequently re-
leased on conditions and later adjudicated no longer sexually dan-
gerous may not, as a matter of statutory construction, be subjected,
by reason of breach of release conditions alone, to a § 5 proceeding
to determine anew his sexual dangerousness. [242-246]

Following commitment of a prisoner to a treatment center for an inde-
terminate period of from one day to life as a sexually dangerous per-
son pursuant to G. L. c. 123A, §§ 4, 5, and a hearing on his subse-
quent petition for release under § 9 and an adjudication that he was
no longer sexually dangerous and an order for his conditional re-
lease, there was no constitutional authority under § 9, for a judge
of the Superior Court, upon a motion by the Commonwealth, to
vacate his order of conditional release, to find that on the date of
that order the prisoner had been a sexually dangerous person, to
find that he had breached the conditions of his release and was
presently a sexually dangerous person, and to order him recom-
mitted to the treatment center under the terms of the original com-
mitment; the judge's order must be reversed, the finding that the
prisoner was not a sexually dangerous person reinstated and he
must be discharged from custody. [246-251] BRAUCHER, J., dissenting
with respect to the discharge from custody.

_____

MOTION for recommitment filed in the Superior Court on August 16, 1973.

The proceeding was heard by *Adams*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Max D. Stern* for the defendant.

*James W. Sahakian*, Special Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The respondent, Richard C. Travis, appeals from an order of a Superior Court judge which vacated a prior order of conditional release under G. L. c. 123A, § 9, and ordered his recommitment to the treatment center for sexually dangerous persons at the Massachusetts Correctional Institution at Bridgewater (Bridgewater). Travis contends that the judge had no constitutional authority under G. L. c. 123A, § 9, to recommit him because he had previously been found not to be a sexually dangerous person, and the judge could not validly vacate that prior finding. We agree, and we therefore reverse.

It is clear that the judge followed in every respect the procedure authorized by statute, but it is also clear to us that the statute violates due process of law.

This case has a long and complicated procedural history, and we summarize the relevant portions. Travis was found to be a sexually dangerous person pursuant to G. L. c. 123A, §§ 4, 5, and was committed to Bridgewater for an indeterminate period of from one day to life. In 1973, he filed a petition for release under G. L. c. 123A, § 9. After a hearing on the petition, a judge of the Superior Court on July 26, 1973, found that Travis was no longer sexually dangerous and ordered his conditional release from Bridgewater.[1]

[1] Travis was placed on probation for a period of three years. The following conditions were imposed on his release: "You shall be subject to the continuing authority of the Treatment Center and specifically responsible to Mr. Ralph F. Garofalo, Deputy Director of the Center. You shall report to Mr. Garofalo or his designee at time and place to

Commonwealth *v.* Travis.

On August 16, 1973, following an incident which led to Travis's indictment for kidnapping, the Commonwealth filed its original motion to recommit him. The indictments were continued without a finding and subsequently dismissed. After a hearing on September 24, 1973, no action was taken on the motion, and pursuant to Travis's request he was committed to Medfield State Hospital for a period of examination not to exceed twenty days. Travis was released on October 12, 1973, and another hearing was held at which time he was placed in the custody of his attorney on representation of counsel that Travis had been accepted for an indefinite period of voluntary in-patient treatment at Medfield State Hospital. The director of that hospital subsequently refused to admit him.

Travis remained in the custody of his attorney until January, 1974. During that time he attempted unsuccessfully to gain admittance to several hospitals. He resumed therapy with his former Bridgewater therapist who had become associated with the L. B. Cutler Clinic. Travis continued therapy on an approximate weekly basis until June, 1974, and also secured employment which he held until June, 1974, except for a two-month period from January to March, 1974. From January to June, 1974, Travis resumed his probationary status and reported "fairly regularly" to his probation officer. In March, 1974, Travis was involved in an incident with a male prostitute which bore a superficial resemblance to the incidents which

be prescribed by the Center. You shall not become involved in any other programs or treatment or counselling without explicit permission of the Treatment Center. . . . (1) You are to remain under the joint authority of the Department of Probation and the Treatment Center. (2) Report at designated times to both departments. (3) Employment, acceptable to the Treatment Center and the Probation Department, shall be obtained. (4) A dwelling place, acceptable to Treatment Center and the Probation Department, shall be obtained. (5) You shall promptly report to both the Treatment Center and the Probation Department any change in your emotional balance or circumstances which might in any way affect your self-control. (6) And any arrangements for adjunct treatment, education or other matters shall be subject to written confirmation of the Probation Department and the Treatment Center."

led to his original commitment. No criminal charges arose out of this incident.

Travis was arrested on June 20, 1974, for alleged violation of probation. The Commonwealth once again pressed its motion to recommit. The judge who had conducted the previous proceedings was absent from the Commonwealth at that time, and another judge of the Superior Court conducted three days of hearings on the petition. As a result of these hearings, Travis was ordered returned to Bridgewater for a sixty-day examination as an amendment to his 1973 release conditions. On Travis's motion the matter was reassigned to the original judge; however, the second judge ordered Travis's continued commitment pending final disposition.

The original judge thereupon after argument issued his preliminary conclusions of law in which he ruled, inter alia: (1) that he had the power to vacate his prior finding of July 26, 1973; (2) that he had the power to recommit Travis under G. L. c. 123A, § 9; and (3) that on the basis of the evidence presented at the hearings before the second judge and the psychiatric reports submitted after the sixty-day observation commitment there was clear indication that Travis was sexually dangerous. He therefore ordered another hearing to determine whether or not Travis had broken the conditions of his release and was sexually dangerous at that time. After that hearing, the judge issued his findings, rulings and order on February 20, 1975, which (1) vacated the July 26, 1973, order of conditional release and found that Travis had been a sexually dangerous person at that time; (2) found that Travis had breached the conditions of release and was presently a sexually dangerous person, and (3) ordered Travis recommitted to Bridgewater under the terms of the original commitment of from one day to life.[2] Subsequently, an

[2] The judge found that Travis did not require maximum security confinement but rather that a minimum security facility with a structured therapy program coupled with day release would be more appropriate for him. However, since apparently no such program exists, the judge ordered commitment to Bridgewater.

amended order of recommitment was made on April 29, 1975, which transferred Travis from Bridgewater to the Solomon Carter Fuller Mental Health Center and authorized hospital personnel to permit gradually increasing release time. By the time briefs were filed in this case, Travis was employed full time and was permitted to spend all except two nights a week at home with his wife.

1. It is clear that the judge was correct in ruling that he had power under the statute to recommit Travis. That portion of G. L. c. 123A, § 9, as appearing in St. 1966, c. 608, with which we are concerned in this case provides as follows: "[A]ny person committed to the center ... shall be entitled to have a hearing for examination and discharge once in every twelve months, upon the filing of a written petition by the committed person, his parents, spouse, issue, next of kin or any friend. ... Said petition shall be filed in a superior court for the district in which said person was committed, and the court shall set a date for a speedy hearing. ... Upon a finding by the court that such person is no longer a sexually dangerous person, it shall order such person to be discharged, or conditionally released from the center. He shall be released subject to such condition, if any, as the court may impose, including any treatment or reporting to any clinic or outpatient department for physical or mental examination, and he shall be subject to being placed under the jurisdiction of a probation officer, or such other agency or authority as is deemed necessary. Any person released conditionally shall be subject to the jurisdiction of said court until discharged and such terms and conditions of release may be revised, altered, amended, revoked by the court at anytime, and such discharge shall not result until after due notice to the treatment center and the district attorney in the county where the commitment first originated from and the district attorney in the county where the person resides, or will reside, at the time of the hearing and discharge."

The first argument presented by Travis is that G. L. c. 123A, § 9, does not expressly authorize a court to recommit an individual who has been conditionally released. The

Commonwealth argues that such recommitment power was precisely the intent of the Legislature. We briefly review the legislative history of G. L. c. 123A, § 9.

The section was added by St. 1958, c. 646, § 1, and originally provided in relevant part that "[u]pon a finding by the court that such person is no longer a sexually dangerous person, the court shall order such person to be discharged from the center and he shall be released subject to such conditions, if any, as the court may impose, including the condition that such person receive out-patient treatment." This section was amended by St. 1966, c. 608, which substituted the present language authorizing the conditional release. The concerns which precipitated the change are clearly expressed in the report of the legislative committee which drafted the 1966 amendment to § 9: "Release is effected from the Center under the law by a finding of the Superior Court that the person is no longer considered to be 'Sexually Dangerous', or through parole action. The Committee has studied one particular case in great detail — conducting field investigations and hearings — in which a patient at the Center was released by order of the Superior Court with the provision that this patient should receive out-patient treatment at a State Hospital. This was not done and the Court was without authority to enforce the treatment, its main function under the present law simply being to decide whether the patient was — or was not — a sexually dangerous person. The released individual did not receive — and could not be forced to undergo — such treatment.... It is the view of this Committee that because psychiatrists differ in their opinions, it is unfair to ask the Courts to decide simply whether or not one is a sexually dangerous person, and to assume the responsibility for releasing such persons by the use of such uncertain tools. This places a tremendous obligation on the Courts and to the public no resultant protection is afforded. After study, the Committee is of the opinion that the Superior Court should be authorized to grant a conditional release to the patient subject to such conditions and supervisions as the Court deems will aid the

public safety and help to adjust the patient back into the community. The conditions should include the following: 1. Any treatment or reporting to any clinic, or out-patient department for physical or mental examination. 2. And, he shall be subject to being placed under the jurisdiction of a Probation Officer, or such other agency or authority as is deemed necessary. 3. Any person released conditionally shall be subject to the jurisdiction of the releasing Court — and the Court may revise, alter, amend or revoke the stated conditions at any time. 4. And, such person breaching said conditions may be returned to the center." Joint Special Committee Report, 1966 Senate Doc. No. 914 at 9-10.

The proposed amendment to G. L. c. 123A, § 9, drafted by the committee was enacted into law without modification. While § 9 does not, as Travis points out, expressly authorize courts to recommit after a no longer sexually dangerous finding and conditional release, a conclusion that the Legislature did not intend to confer such power would be manifestly inconsistent with the committee's concern for the ability of courts to enforce release conditions and its conclusion that courts should have the power to recommit for breach of such conditions. Such a reading of legislative intent would render the amended version of § 9 as ineffective as the prior version with respect to enforcement of release conditions, a result clearly contrary to the legislative intent.

While the first paragraph of § 9 which deals with parole of persons committed under G. L. c. 123A does expressly confer on the parole board the power to recommit for breach of parole condition,[3] the lack of express authoriza-

---

[3] The relevant portions of G. L. c. 123A, § 9, dealing with parole provide: "Any person committed to the center for treatment and rehabilitation under section five or section six shall be eligible for parole.... The parole board ... may grant such person a parole permit to be at liberty upon such terms and conditions as it shall prescribe, including the condition he receive out-patient treatment, and any other condition that the commissioner of mental health may recommend. Such terms and conditions may be revised, altered, amended or revoked by the parole board at any time. The violation by the holder of a parole per-

tion for an analogous judicial power cannot carry any significant weight, especially as a holding that courts were not intended by the Legislature to have such power would effectively nullify the language of the statute pertaining to release conditions and continuing jurisdiction and render meaningless any distinction between discharge and conditional release.

The conclusion is inescapable that the Legislature intended to confer on courts the power to recommit for breach of release conditions. However, the recommitment intended by the Legislature appears to be recommitment under the terms of the original commitment, which would necessarily entail a vacation of the prior finding that the individual was no longer sexually dangerous for, as is discussed further in part 2 of this opinion, a person may not legally be confined under G. L. c. 123A unless he is presently sexually dangerous.

We find no indication in the statute that the Legislature intended that the breach of a release condition would be a valid basis for initiating new proceedings to determine an individual's sexual dangerousness at the time of the breach. While G. L. c. 123A, § 1, establishes a relatively broad definition of "sexually dangerous person," the procedure specified by G. L. c. 123A, § 5, by which a person may be adjudicated to be a sexually dangerous person and subject to indefinite commitment may be invoked only against two limited classes of people: those convicted in the Superior Court of certain enumerated sex-related crimes (G. L. c. 123A, § 4) and those serving sentences for any criminal offense or in the custody of the Department of Youth

---

mit to be at liberty of any of the terms or conditions of such permit, or of any law of the commonwealth, shall render such permit void. The parole board may revoke such permit at any time. If such permit has become void or has been revoked the parole board may order the arrest of the holder of such permit by any officer qualified to serve civil or criminal process in any county, and the return of such holder to the center for further treatment under confinement. A person who has been so returned to the center shall be detained therein according to the terms of his original commitment."

Services (G. L. c. 123A, § 6). *Commonwealth* v. *Major,*
354 Mass. 666, 667 (1968), cert. denied, 393 U.S. 1109
(1969). The statute provides for no other circumstance in
which the § 5 procedure may be invoked. Travis fell into
neither of the specific statutory categories at the time of
the challenged proceedings: he was at that time legally
not a sexually dangerous person, and he had neither been
convicted of a § 4 offense subsequent to that adjudication
nor was he a prisoner in custody pursuant to criminal
sentence.

We conclude, therefore, that as a matter of statutory
construction, breach of release conditions alone cannot
give rise to a § 5 proceeding to determine anew an individ-
ual's sexual dangerousness once such person has been ad-
judicated no longer sexually dangerous. However, we are
constrained to conclude, as we have discussed above, that
the Legislature did intend to authorize a court to recom-
mit, under the terms of the original commitment, individ-
uals who violated the conditions of their release.

It is clear that recommitment in such circumstances is
an unconstitutional exercise. We turn now to a discussion
of the constitutional considerations.

2. Proceedings under G. L. c. 123A have long been
labeled "civil" proceedings. See, e.g., *Commonwealth* v.
*Lamb,* 365 Mass. 265, 269 (1974); *Commonwealth* v. *Ma-
jor,* 354 Mass. 666 (1968); *Commonwealth* v. *Dagle,* 345
Mass. 539, cert. denied, 375 U.S. 863 (1963); *Common-
wealth* v. *Ackers,* 343 Mass. 63 (1961); *Commonwealth* v.
*Page,* 339 Mass. 313 (1959). However, the civil-criminal
distinction cannot be applied blindly to deny constitu-
tional rights to those persons subject to a one day to life
commitment as sexually dangerous persons which may
have far more serious consequences for the individual than
criminal punishment. See *Andrews, petitioner,* 368 Mass.
468 (1975). Cf. *Breed* v. *Jones,* 421 U.S. 519 (1975); *In re
Gault,* 387 U.S. 1 (1967).

We stress at the outset that, under the current statu-
tory scheme, a judge must first find that an individual is
no longer sexually dangerous before he may discharge or

conditionally release him.[4] General Laws c. 123A, § 1, defines "sexually dangerous person" as "[a]ny person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

One of the principal grounds of justification for the indefinite commitment of persons adjudicated sexually dangerous after a conviction of one of the sex-related offenses specified in G. L. c. 123A, § 4, is the protection of the public from repetition of such sex-related aggression. Cf. *Commonwealth* v. *Gomes,* 355 Mass. 479, 484 (1969); *Commonwealth* v. *Major,* 354 Mass. 666, 668 (1968); *Peterson, petitioner,* 354 Mass. 110, 117 (1968). However, the justification ceases once there has been an adjudication that an individual is no longer sexually dangerous. "Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding. Equally important, confinement must cease when those reasons no longer exist." *O'Connor* v. *Donaldson,* 422 U.S. 563, 580 (1975) (Burger, C.J., concurring). See *Jackson* v. *Indiana,* 406 U.S. 715, 738 (1972) ("At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."). The due process clause at minimum requires that an individual be released

---

[4] It is to be noted that our discussion here is inapplicable to the parole provisions of G. L. c. 123A, § 9. The parole context is readily distinguishable from judicial discharge/release on the basis that a person may be paroled under § 9 without a finding that he is no longer sexually dangerous. It is equally inapplicable to the provision of G. L. c. 123A, § 5, which authorizes to the court making the original determination that a person is sexually dangerous the option of granting probation or suspending commitment on the condition that the person receive out-patient treatment rather than imposing a one day to life commitment.

from confinement on a finding that he is no longer sexually dangerous.

Since the due process clause mandates that a person may be confined under G. L. c. 123A only so long as he is a sexually dangerous person, violation of a release condition cannot by itself justify recommitment. Such a construction would destroy any possible pretense that a commitment under G. L. c. 123A is civil and rehabilitative in nature rather than criminal and punitive. The statute provides no mechanism for a new status adjudication for non-sexually dangerous persons who have been conditionally released, and we doubt that it could constitutionally do so, although we need not reach that issue here. Therefore, a court may recommit such a person only if it has the power to vacate the previous finding that the individual was no longer sexually dangerous and enter a new finding that he was then and continues to be a sexually dangerous person.

The Commonwealth argues that a conditional release is not a final judgment, maintaining that the judgment is not final until the individual is discharged absolutely. Since the statute authorizes a court to retain continuing jurisdiction over conditionally released persons and to amend or revoke entirely the conditions of release, it argues that a court must necessarily have the implied power to vacate the previous finding.

However, such a construction conflicts with the express language of G. L. c. 123A, § 9. That section does not authorize a court to condition the finding that a person is no longer sexually dangerous. An absolute finding that the individual is no longer sexually dangerous is a condition precedent to any form of judicial release from confinement. While the Legislature may have intended the power to vacate, such power does not spring from any conditional attributes of the finding itself. Rather, the Legislature appears to have been concerned with cases in which, on the evidence before him, a judge under the applicable standard of proof concludes that an individual is not sexually dan-

Commonwealth *v.* Travis.

gerous, but in which events subsequent to the conditional release indicate that the court may have "made a mistake" based on the inexact nature of psychiatric prediction of future behavior.

While we are sympathetic to the concerns which prompted the Legislature to fashion the conditional release provisions, we hold that a judge may not vacate a prior finding that an individual is no longer sexually dangerous. The Commonwealth argues that, since G. L. c. 123A proceedings are civil in nature, such judgments are governed by the standards for vacating judgments in ordinary civil cases. However, where the potential deprivation of liberty is as massive as it is here, we conclude that, as a matter of fundamental fairness under the due process clause of the Fourteenth Amendment to the United States Constitution, a finding that an individual is no longer sexually dangerous must be as immune from subsequent or collateral attack as is a criminal judgment of acquittal.[5]

We think that this conclusion follows from the rationale of our decision in *Andrews, petitioner,* 368 Mass. 468 (1975). In that opinion we held that "the Commonwealth must prove its case beyond a reasonable doubt in order to obtain an order granting a petition that a person be adjudicated ... [a sexually dangerous person] and committed as such or that he continue to be held in custody

---

[5] Such protection is afforded in the traditional criminal context by the double jeopardy clause of the Fifth Amendment to the United States Constitution. While that clause is not strictly applicable to G. L. c. 123A proceedings, we conclude that analogous protection is necessary in this context. Cf. *Breed* v. *Jones,* 421 U.S. 519 (1975). However, our reasoning applies only to circumstances in which there has been a finding that an individual is not sexually dangerous at that particular time and a subsequent or collateral attack is made on that finding as it relates to the individual's status at the time the finding was made. Our reasoning here would not bar subsequent statutorily and constitutionally valid proceedings under this chapter to determine an individual's status at the time of the subsequent proceedings; for example, a person found not sexually dangerous after conviction of a § 4 offense might later be validly adjudicated to be sexually dangerous after conviction of a subsequent § 4 offense.

whenever his petition for release is heard." *Id.* at 489.[6] *Andrews* makes it abundantly clear that while G. L. c. 123A proceedings are technically classified as civil proceedings, the potential deprivation of liberty mandates that due process protections apply. "Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt." *Speiser* v. *Randall,* 357 U.S. 513, 526 (1958) (dictum). The converse of this proposition is that if the Commonwealth cannot sustain its burden, the individual must be set at liberty.

The proceedings in this case were conducted prior to *Andrews.* At the time that Travis was found to be no longer sexually dangerous, he had the burden of so proving. However, regardless of which party had the burden of proof, we find it intolerable that a person found not sexually dangerous should be indefinitely burdened with the spectre of vacation of that finding.

Section 9 release hearings are to be conducted according to the procedures specified in G. L. c. 123A, §§ 5, 6, which contemplate a full trial-type hearing at which both parties have full opportunity to present evidence and cross-examine witnesses. We can see no justification for allowing the Commonwealth to relitigate the issue of sexual dangerousness based on the evidence available at the time of the release hearing. The Commonwealth further argues that courts must have the power to vacate the finding if the released individual's subsequent conduct demonstrates that he was still sexually dangerous at the time that the judge found he was not. The not sexually dangerous finding is an unconditional adjudication of status at the time of the hearing, and as such may not be reevaluated in light of subsequent events. We think that due process requires no less in this context. Subsequent events may give rise to

---

[6] We have not considered whether the *Andrews* rule should be applied retroactively, and we need not reach that issue here because it is unnecessary to the resolution of the case before us. However, the rationale behind that rule carries equal force in this context.

new G. L. c. 123A proceedings if the triggering conditions of §§ 4 or 6 are present, but they may not be a basis for invalidating the prior finding.

We wish to note that if the Legislature wishes to give courts the power to impose and enforce conditions of release, it may do so by authorizing a court to release persons committed under G. L. c. 123A on probation without a finding that they are no longer sexually dangerous.[7] There would be no constitutional prohibition against a court's retaining jurisdiction over a conditionally released individual as long as that conditional release is not predicated on a finding that the individual is no longer sexually dangerous. And, of course, under our decision in *Andrews,* a person committed under G. L. c. 123A will be entitled to a finding that he is no longer a sexually dangerous person if the Commonwealth cannot prove his sexual dangerousness beyond a reasonable doubt.

Travis could not constitutionally be recommitted unless he were sexually dangerous. Since there was no statutory basis for convening new proceedings under G. L. c. 123A to determine whether or not he was a sexually dangerous person at the time the Commonwealth pressed its motion to recommit and since we have concluded that the finding that he was not sexually dangerous may not be subsequently vacated, it follows that the order of the Superior Court must be reversed, the finding of July 26, 1973, that he was not a sexually dangerous person reinstated, and Travis must be discharged from custody.

*So ordered.*

---

[7] There is some indication in the legislative history of the 1966 amendment (St. 1966, c. 608) that at least at one stage the Legislature may have considered providing two judicial alternatives: (1) a discharge of the person in question after a finding that he is no longer a sexually dangerous person, and (2) *without a finding that a defendant is no longer a sexually dangerous person,* a release on specified conditions. See 1966 Senate Doc. No. 914, at 9-10. (A partial text of that document is included in part 1 of this opinion.) However, the language emphasized above was not included in the statute. This, constitutionally, is a fatal defect.

Commonwealth *v.* Travis.

BRAUCHER, J. (dissenting). I agree that the order appealed from must be reversed, but I do not agree that Travis must be discharged from custody. In my view, if it is now shown beyond a reasonable doubt that he is presently a sexually dangerous person, the conditions of his release "may be revised, altered, amended, revoked by the court" under G. L. c. 123A, § 9. I therefore dissent.

The statute is constitutionally defective in providing for the recommitment of a person who is not sexually dangerous, merely because he has violated a condition of his release. The difficulty could have been avoided if the release had been ordered by the parole board, without the fatal finding that he "is no longer a sexually dangerous person." Or the Legislature could have provided for a conditional release by the court without the fatal finding. But our question is what effect is to be given to the fatal finding in the case before us.

The Superior Court judge saw the problem and sought to solve it by vacating the fatal finding. I agree with the court that it was not open to the judge, long after the finding was made, thus to vacate it retroactively. But I see no constitutional obstacle to a new finding, based on all the information now available, that Travis is now a sexually dangerous person. Recommitment could only be ordered on proof of the fact "beyond a reasonable doubt." *Andrews, petitioner,* 368 Mass. 468, 489 (1975).

If such a finding is constitutionally permissible, we should read the statute to permit it. The words "conditionally released" clearly indicate a legislative intention that a breach of condition should have some effect. Section 9 goes on to provide that the "person released conditionally shall be subject to the jurisdiction of said court until discharged," and I think that language permits a new finding that the person released is now sexually dangerous. Such a reading would serve the legislative purpose better than a reading which results in the final discharge of a person who is sexually dangerous beyond a reasonable doubt. Moreover, such a reading would avoid the serious danger, which the Legislature sought to avoid, that application for

release may be denied unnecessarily if there is no power to impose effective conditions on the release.

Travis was originally committed to the treatment center in 1960. He began to respond to treatment in 1971, and was conditionally released in July, 1973. He obtained employment, and has since married. In June, 1974, he was arrested, and he remained in custody until the recommitment order was entered in February, 1975. That order was entered before the *Andrews* decision, and did not rest on proof beyond a reasonable doubt. An amended order entered in April, 1975, authorized work release, and we are informed that he later was permitted to work full time and to spend all but two nights a week at home with his wife. It appears that he has been treated fairly and humanely, although his constitutional rights have been violated in highly technical respects. Under today's decision, if it had been known in advance, it seems likely that he might still be languishing in the treatment center, without progress, work release, or wife. In my view the Legislature did not intend to provide "protection" of constitutional rights in such a manner.