COMMONWEALTH *vs.* WAYNE DAVIS.

Middlesex. January 9, 1990. - March 15, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Sex Offender. Due Process of Law*, Sex offender. *Constitutional Law*, Equal protection of laws, Sex offender, Double jeopardy, Separation of powers.

At a hearing in the Superior Court in which the defendant was adjudged a sexually dangerous person, the defendant's rights under G. L. c. 123A and the due process clause of the Fourteenth Amendment to the United States Constitution were not violated by the judge's order committing him to the treatment center at the Massachusetts Correctional Institution at Bridgewater where, although the defendant's conduct made it difficult for him to receive treatment at the center, there was testimony at the hearing that the treatment center offered professionally supervised programs designed to aid in the rehabilitation of sexually dangerous persons. [49-50]

There was no merit to the contention by a defendant, who had been adjudged a sexually dangerous person and committed to the treatment center at the Massachusetts Correctional Institution at Bridgewater, that the fact that a mentally ill patient committed under G. L. c. 123 has a statutory right to avoid being placed in an environment of higher security than his condition warrants, whereas one committed to the treatment center as a sexually dangerous person under G. L. c. 123A has no correlative right, violated his rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution. [50-51]

There was no merit to the contention by a defendant who had been adjudged a sexually dangerous person that committing him under G. L. c. 123A to the treatment center at the Massachusetts Correctional Institution at Bridgewater for an indeterminate period of time, after he had served a substantial portion of his criminal sentence, placed him in unconstitutional double jeopardy. [51]

PETITION filed in the Superior Court Department on December 31, 1986.

The case was heard by *Hiller B. Zobel*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Sanford Kreisberg*, Assistant District Attorney (*Catherine E. Sullivan*, Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. After a hearing in the Superior Court, the defendant was adjudged a sexually dangerous person (SDP), and committed to the treatment center at the Massachusetts Correctional Institution at Bridgewater for an indeterminate period of from one day to life. See G. L. c. 123A, § 6 (1988 ed.). Although he does not contest the finding that he is an SDP, the defendant appealed the order committing him to the Bridgewater treatment center, claiming he could not receive treatment there and that only a small number of out-of-State treatment facilities could supply him with treatment suited to his particular needs. This court granted the defendant's application for direct appellate review, and we now affirm the judgment of the Superior Court.

In January, 1986, the defendant was convicted on two indictments charging three counts of indecent assault and battery on a child and on one indictment charging open and gross lewdness. While serving his sentence the defendant engaged in inappropriate sexual behavior, even when his personal safety was endangered, by making sexual advances to other prisoners. At the SDP hearing, all mental health experts testified that the defendant was an SDP in need of constant supervision. A number of those experts stated a belief, however, that the Bridgewater treatment center was not the best place for the defendant to receive treatment. According to those experts, commitment to a secure group home, where the defendant could receive constant supervision and training, was most preferable. No such facility is available in the Commonwealth. One witness testified that two appropriate facilities were the sexual program at Johns Hopkins Medical Center in Baltimore and the sexual addiction unit of Jo Ellen

Smith Psychiatric Hospital in New Orleans. There was undisputed testimony that a six-month program of treatment at the Johns Hopkins facility would cost approximately $48,000, and that a four-to-six month program of treatment at the Jo Ellen Smith facility would cost between $30,000 and $35,000.

The judge found that treatment of the defendant at either the Johns Hopkins facility or the Jo Ellen Smith facility would be "more beneficial" than treatment at the Bridgewater treatment center. At the conclusion of the testimony the judge, nonetheless, ordered the defendant to be committed to the Bridgewater treatment center.

1. *The defendant's commitment to the Bridgewater treatment center.* On appeal, the defendant contends that his commitment to the Bridgewater treatment center is contrary to applicable statutory and constitutional protections, because he cannot receive treatment there. In particular, the defendant claims that his commitment to the center violates his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution, as well as his right to be free from double jeopardy under the Fifth Amendment to the United States Constitution. In addition, he claims that his commitment to the center violates his right to treatment under G. L. c. 123A (1988 ed.).

We begin our analysis with the observation that the defendant's argument is unsupported by its essential factual predicate. No testimony was offered, even by the defendant's expert, that the defendant would receive no treatment at Bridgewater, although most of the experts who testified shared the opinion that the treatment center is not the best place for the defendant. The tenor of their testimony, however, is that it is more difficult for him to receive treatment at the center because of his tendency to provoke violent outbursts by sexually provocative conduct. Most of the experts agreed, and the judge so found, that it was necessary to keep the defendant in a secure environment where he would not be a danger to the public. The test of the defendant's commitment, however, is whether constitutional and statutory mini-

mums have been met, "not whether there are optimally different or better ways of doing things." *Doe* v. *Gaughan*, 808 F.2d 871, 877 (1st Cir. 1986).

In *Newton, petitioner*, 357 Mass. 346 (1970), this court explored the issue of the level of treatment that an SDP is entitled to under G. L. c. 123A. In *Newton*, as here, the petitioner contended that the treatment at the Bridgewater treatment center was inadequate. The Superior Court judge in that case agreed, and ordered that Newton be released. This court reversed, ruling that the statute entitled Newton to "treatment which is suitable for him to the best of the staff's collective judgment," and that the trial judge's conclusion that treatment was inadequate was not warranted on the record. *Id.* at 352. Because the evidence indicated that Newton was being offered treatment "designed to help him," *id.*, he had no right to challenge its adequacy further.

The United States Supreme Court has established much the same standard for determining whether the treatment of involuntarily committed patients complies with the protections of the due process clause. In *Youngberg* v. *Romeo*, 457 U.S. 307 (1982), the Court held that the extent of a court's inquiry under the due process clause should be to determine whether "professional judgment in fact [is] exercised." *Id.* at 321.

Applying this standard, we conclude that the defendant's rights under G. L. c. 123A and the due process clause were not violated by the order committing him to the Bridgewater treatment center. There was clear testimony at the hearing that the treatment center offers professionally supervised programs designed to aid in the rehabilitation of SDPs. During a period in 1987 when the defendant had been assigned to the treatment center for evaluation, he had participated in those programs to the extent that concern for his personal safety allowed.

We rule that the defendant's equal protection claim is also without merit. In advancing this claim, the defendant first alleges that he does not require the strict security provided at the treatment center. He then points out that a mentally ill

patient committed under G. L. c. 123, unlike an SDP committed under G. L. c. 123A, has a statutory right to avoid being placed in an environment of higher security than his condition warrants. In support of this argument, the defendant cites *Andrews, petitioner*, 368 Mass. 468, 481 (1975), which states that "any significant procedural rights granted to persons involuntarily committed under c. 123 must be extended to persons involuntarily committed under G. L. c. 123A, § 6."

The flaw in the defendant's argument is that the "procedural rights" at issue in *Andrews, supra* at 472, relate only to the processes by which SDPs are initially committed and subsequently released. We recognized this distinction in *Thompson, petitioner*, 394 Mass. 502 (1985), where we rejected a claim that SDPs at the Bridgewater treatment center are entitled to an annual review similar to the one provided mentally ill patients confined under c. 123.[1] We stated that, "[b]ecause confinement at the treatment center as a sexually dangerous person, and civil commitment to Bridgewater State Hospital, do not have 'generally similar functions and effects,' we conclude that the differences in the availability of less restrictive confinement under c. 123 and c. 123A are fully justified." *Id.* at 508, quoting *Andrews, petitioner, supra* at 480. See *Doe* v. *Gaughan, supra* at 881, citing *Woe* v. *Cuomo*, 729 F.2d 96, 103 (2d Cir. 1984), cert. denied, 469 U.S. 936 (1985) ("There is no constitutional requirement . . . that all mental patients in State-run hospitals receive the same rights or care").

We also reject the defendant's claim that committing him under c. 123A, after he had served a substantial portion of his criminal sentence, placed him in unconstitutional double jeopardy. See *Commonwealth* v. *Gomes*, 355 Mass. 479, 486 (1969).

---

[1] The purpose of the annual review under c. 123 is to determine whether confinement in a less restrictive facility is warranted. *Thompson, petitioner, supra* at 508.

2. *The authority to order out-of-State treatment.* At the close of the hearing, the judge suggested that his disposition of the case might have been different if he believed that he possessed authority to order the defendant sent to an out-of-State treatment facility at the Commonwealth's expense. The judge explicitly invited the defendant to move for reconsideration and brief the issue of the court's authority to order costly out-of-State treatment. The defendant declined this invitation and instead appealed the order of the Superior Court. The defendant states that he seeks "clarification" from this court as to the options open to the judge on disposition.

The issue of a court's authority to order the expenditure of public funds without legislative authority and to intervene in matters normally within the discretion of an executive agency raises serious constitutional questions. Cf. *Guardianship of Anthony*, 402 Mass. 723, 727 (1988). The issue was raised below by a judge who indicated his willingness to receive briefs and hear detailed argument on this issue. The defendant did not avail himself of his opportunity. We decline to consider the issue, not adequately presented below, see *Commonwealth* v. *Haas*, 398 Mass. 806, 816 n.10 (1986); *Commonwealth* v. *Helfant*, 398 Mass. 214, 232 (1986), nor necessary to the disposition of the defendant's claims.

*Order affirmed.*