Toomey, J.
INTRODUCTION
Carlos Diaz (Diaz), brings this petition for Habeas Corpus alleging that neither the Commissioner of Mental Health nor the Commissioner of Corrections (Respondents) possesses the authority to operate the Massachusetts Treatment Center for Sexually Dangerous Persons (Treatment Center) to which he is now committed. Additionally, Diaz claims that his adjudication as a sexually dangerous person is inconsistent with his criminal convictions and that it violates the Double Jeopardy Clause of the United States Constitution. Respondents seek dismissal of the suit pursuant to Mass.R.Civ.P. 12(b)(6) on the grounds that Diaz’s claim is premised upon his fundamental misunderstanding of recent developments regarding control of the Treatment Center. For the reasons stated below, Respondents’ motion to dismiss is ALLOWED.
BACKGROUND
The following facts are undisputed. On March 11, 1971 Diaz entered a plea of guilty to the offense of sex *239 abuse in the first degree in the Bronx County Supreme Court, New York. On February 22, 1979, in Worcester Superior Court, Diaz was convicted, also on pleas of guilty, of two criminal offenses occurring after his release from New York custody, to wit, rape of a child and indecent assault and battery on a child under fourteen years of age. For those offenses, the Worcester Superior Court sentenced petitioner to concurrent state prison terms of three to ten years and three to five years.
On March 13, 1984, the Worcester Superior Court (Travers, J.) adjudicated Diaz a sexually dangerous person, and ordered him committed to the Treatment Center for a term of not less than one day and not more than his natural life. G.L.c. 123A. Diaz has now completed his criminal sentence and is being held at the Treatment Center solely on account of his civil commitment. The instant petition seeks relief from that commitment.
DISCUSSION
Habeas Corpus relief is available to an individual who seeks remedy for events occurring after his conviction and who would be entitled to immediate release upon a successful petition. Hennessey v. Superintendent MCI-Framingham, 386 Mass. 848, 850-51 (1982); Averett, petitioner, 404 Mass. 28,31 (1989). Dismissal, pursuant to Mass.RCiv.P. 12(b)(6), of a.petition for Habeas Corpus will result, however, if petitioner can prove no set of facts, in support of his claim, that would entitle him to relief. At bar, no such facts are shown, and the petition must, therefore, be dismissed.
I. The Challenge to the Department of Mental Health’s Authority to Operate the Treatment Center
Diaz seeks immediate release from the Treatment Center on the grounds that St. 1993, c. 489 extinguished the Department of Mental Health’s authority over the Treatment Center. As a result, he argues, no government body presently has the authority to operate the Treatment Center.
When the court committed Diaz to the Treatment Center in 1984, the Department of Mental Health had undisputed responsibility for the “care, custody, treatment and rehabilitation” of Treatment Center residents. G.L.c. 123A, §2. The Department of Corrections provided the custodial personnel for the facility. Id. This admittedly awkward management scheme had been incorporated into a 1974 consent decree entered by the Federal District Court which had assumed jurisdiction over certain aspects of the operation of the Treatment Center. Williams v. Lesiak, Civil Action No. 72-571 (D.Mass. June 3, 1974), and King v. Greenblatt, Civil Action No. 72-768 (D.Mass. June 3, 1974).
On January 14, 1994, St. 1993, c. 489, upon which petitioner now relies, became law. The statute transferred control over the Treatment Center from the Department of Mental Health to the Department of Corrections. St. 1993, c. 489, §2. Thereafter, on May 27, 1994, the Federal District Court heard a motion to modify the 1974 consent decree that had recognized the statutorily created responsibility for services provided by the Treatment Center in the Department of Mental Health and control over the custodial employees in the Department of Corrections. The court denied the motion to modify its 1974 consent decree. Thus, the 1974 consent decree continued in effect, requiring the Department of Mental Health to operate the Treatment Center with the Department of Corrections in charge of custodial matters.
Diaz alleges, however, that St. 1993, c. 489 deprived the Department of Mental Health of its authority over the Treatment Center and vested that authority in the Department of Corrections. The 1994 refusal of the Federal District Court to modify the 1974 decree was not, Diaz maintains, competent to overcome the eviscerating effects of St. 1993, c. 489 and to resuscitate the Department of Mental Health’s operational control. And, he continues, the federal refusal to modify retains the status quo ante which left the Department of Corrections as without operational control. The effect, according to Diaz, is that neither government agency is authorized to operate the Treatment Center. Thus, he claims that he is being held in the Treatment Center in violation of state law.
Diaz misunderstands the cumulative effect of the multiple statutes and consent decree on the Treatment Center’s operation. The Federal District Court in King v. Greenblatt, Civil Action No. 72-7888 (D.Mass. May 27, 1994), refused to modify the 1974 consent decree requiring both the Department of Mental Health and the Department of Corrections to operate jointly the treatment center. St. 1993, c. 489 does not directly conflict with either the 1994 District Court decision or the 1974 consent decree. The requirements of the 1974 consent decree are intended to remain in place until the problems it addressed are solved. Until that time, both the Department of Mental Health and the Department of Corrections will operate the Treatment Center, in compliance with the consent decree. When the consent decree is modified or vacated, St. 1993, c. 489 will trigger the mechanisms by which the Department of Corrections will be authorized to exercise exclusive operational control over the facility.
The Legislature’s FY 1995 appropriation act supports this Court’s interpretation, supra, of the statute and decisions affecting the Treatment Center. Through the appropriation act, the Legislature authorized the Department of Corrections to “enter into an interagency agreement with the department of mental health to administer and operate” the treatment center. St. 1994, c. 60, §2, item 8900-0100. The Legislature thereby acknowledged, acquiesced in and impliedly ratified the 1974 consent decree by providing that the Department of Mental Health would continue *240 its involvement in the operation of the Treatment Center through an interagency agreement with the Department of Corrections.[2]
II. The Claim of Inconsistency Between Criminal Conviction and Adjudication as a Sexually Dangerous Person
Diaz contends that his criminal convictions for rape of a child and indecent assault and battery on a child are inconsistent with his adjudication as a sexually dangerous person and his commitment to the Treatment Center. In support of the contention, Diaz asserts that, in order for his convictions of rape of a child and indecent assault and battery on a child to enter, the court had to accept that he was criminally responsible, i.e. in control of his actions, at the time of the crime. Conversely, to find him a sexually dangerous person, the court must have found that Diaz exhibited a “general lack of power or inability to control his sexual impulses.” G.L.c. 123A §1, 5. Diaz maintains that those two judicial conclusions are contradictory. His position is, however, untenable.
To convict an individual of rape of a child, one of the elements the trier of fact must find is that, at the time of the crime, the individual possessed the general criminal intent to compel the victim to have sexual intercourse. Similarly, to convict an individual of indecent assault and battery on a child, the trier must find, among other elements, that, at the time of the crime, the individual had the general criminal intent to touch a person without legal justification. Nolan and Henry, Criminal Law, 32 Mass. Prac. §§230 and 234 (2d ed, 1988 and 1994).
A finding that an individual has the required criminal intentin 1971 and 1979 is not necessarily incompatible with a later finding that an individual lacks the ability to control his behavior in 1984. To adjudicate Diaz a sexually dangerous person the court was required to find that, at the time of the hearing, not at the time of the earlier sexual misconduct, Diaz had a general inability to control his sexual impulses. Page v. Commonwealth, 13 Mass.App.Ct. 384, 389 (1982). The determinations of the 70s bear no impact on the rulings of the 80s.
Even if the passage of time were not a dispositive circumstance, there is still no substantive identity between the concepts of responsibility and nonsexual dangerousness. Diaz’s criminal responsibility does not suggest his general ability to control his sexual impulses. Indeed, even the lack of substantial capacity to conform one’s conduct to the requirements of the law does not, by itself, establish lack of criminal responsibility. McHoul v. Commonwealth, 10 Mass.App.Ct. 878 (1980). Thus, Diaz’s rape and indecent assault and battery convictions and their implication of responsibility are not inconsistent with his subsequent adjudication as a sexually dangerous person with its implication of an inability to control sexual impulses.
III. The Double Jeopardy Claim
Diaz’s final argument in favor of Habeas Corpus is that his commitment as a sexually dangerous person violates the Double Jeopardy Clause of the Fourteenth Amendment to the United States Constitution. He claims that his civil commitment to the Treatment Center constitutes a punishment for conduct for which he had already been criminally convicted and punished by sentence to state prison. The claim is wholly without merit.
It is well established in this Commonwealth that commitment under G.L.c. 123Ais not penal in nature. Individuals are committed under the statute for the purpose of treatment and rehabilitation. G.L.c. 123A §2. The statute “does not intend punishment and does not in terms impose it, and nothing therein justifies punitive treatment or confinement under prison conditions, except such as are reasonably required for security.” Commonwealth v. Major, 354 Mass. 666, 668 (1968), cert, denied 393 U.S. 1109 (1968), citing Commonwealth v. Page, 339 Mass. 313 (1959) (statute does not deny equal protection). Thus, commitment under G.L.c. 123A does not violate the double jeopardy clause of the United States Constitution because the commitment is manifestly nonpunitive in character. Commonwealth v. Davis, 407 Mass. 47, 51 (1990); Commonwealth v. Gomes, 355 Mass. 479, 486 (1969).
ORDER
For the foregoing reasons, it is hereby ordered that Respondents’ motion to dismiss Carlos Diaz’s Petition for Habeas Corpus is ALLOWED.

Diaz argues that this appropriation bill does not apply to the Treatment Center but rather to the “Nemansket Correctional Center” to which the bill refers. Although Diaz is correct that the bill refers to the Nemansket Correctional Center, he overlooks that St. 1994, c. 489, §2 defines the facility established for the care, custody, treatment and rehabilitation of persons adjudicated as being sexually dangerous as the “Nemansket Correctional Center." Thus, when the appropriation bill refers to the Nemansket Correctional Center, it is referring to the Treatment Center where Mr. Diaz is presently held. “A rose by any other name . . .” Shakespeare, Romeo and. Juliet, Act I, Scene V, 11. 42-43.