COMMONWEALTH *vs.* THOMAS KNOWLTON.

Middlesex. April 3, 1979. — July 17, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Sex Offender,* Competency at time of commitment hearing. *Insanity. Practice, Civil,* Sex offender, Commitment proceeding.

If sufficient information is brought to the attention of a judge conducting a hearing on sexual dangerousness under G. L. c. 123A, § 6, to raise a substantial question as to the defendant's competence, the judge is required to conduct an inquiry into the defendant's competence before proceeding with the hearing. [483-488]

PETITION for commitment filed in the Superior Court on February 24, 1978.

The case was heard by *Tamburello,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Beth H. Saltzman* for the defendant.

*William L. Pardee*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. We granted the defendant's motion for direct appellate review of the determination that he was a sexually dangerous person (SDP) to consider the sole issue raised by this appeal: whether an individual may be adjudged sexually dangerous and committed to an institution after an SDP hearing conducted pursuant to G. L. c. 123A, § 6, without a prior competency hearing, where there is a substantial question at the time of the SDP hearing of the defendant's competence.[1] We hold that if sufficient information is brought to the attention of the judge to raise a substantial question as to the defendant's competence, G. L. c. 123A, § 6, requires that the judge conduct an inquiry into the defendant's competence before proceeding with the hearing.

The facts are not in dispute. On May 26, 1977, the defendant was convicted of the crime of unnatural and lascivious acts with a child under the age of sixteen. He was sentenced to a term of imprisonment at the Billerica house of correction.

Acting pursuant to G. L. c. 123A, § 6,[2] the master at

---

[1] The parties have correctly assumed that "[t]he test to be applied in determining the competence of the defendant is 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.' " *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971), quoting from *Dusky* v. *United States*, 362 U.S. 402 (1960). See *Commonwealth* v. *Hill*, 375 Mass. 50, 51-52 (1978). Compare *Doe* v. *Doe*, 377 Mass. 272, 278 (1979) (standard for appointment of guardian under G. L. c. 201, § 6).

[2] General Laws c. 123A, § 6, as amended through St. 1974, c. 324, §§ 2, 3, provides in pertinent part: "If a prisoner under sentence in any jail, house of correction or prison, . . . appears to the . . . master, . . . who has him in custody . . . to be a sexually dangerous person and in need of the care and treatment provided at the center, such officer may notify the commissioner of mental health, who shall thereupon cause such prisoner to be examined by a psychiatrist at the institution wherein he is confined. Such psychiatrist shall report the results of his examination in writing to the . . . master, . . . and if such report indicates that such person may be a sexually dangerous person, . . . the

Billerica filed a motion in the Superior Court in August, 1977, seeking to commit the defendant to the treatment center at the Massachusetts Correctional Institution at Bridgewater (treatment center), for a sixty-day observation period. A judge granted the motion on September 28, 1977.

Two psychiatrists examined Knowlton at the treatment center. Their report was filed in the Superior Court on December 5, 1977. The report concluded that, in the opinion of the psychiatrists, Knowlton was a sexually dangerous person.

Thereafter, the Commonwealth filed a petition requesting that Knowlton be committed as an SDP to the treatment center for an indeterminate period of from one day to life. A hearing on the Commonwealth's petition was held on April 6, 1978.

---

master . . . after having notified said person of the nature of the proceedings and the possibility of his commitment to the center, shall thereupon transmit the report to the clerk of the courts for the county wherein such prisoner was sentenced, . . . together with a motion to commit such person to the center or a suitable branch thereof for examination and diagnosis for a period not exceeding sixty days. At least fourteen days prior to acting upon said motion, the court shall notify said person that it is considering his commitment to the center or a suitable branch thereof for a period not exceeding sixty days, and shall inform said person of his right to be represented by counsel during the pendency of said motion or any subsequent commitment petition. If the court grants the motion, it shall commit such person under the provisions of section four insofar as may be applicable. . . .

"If the report of the psychiatrists to the court as required under section four . . . clearly indicates that such prisoner is a sexually dangerous person, the clerk shall thereupon notify the court and the district attorney, and the district attorney shall file a petition for commitment of the prisoner to the center, or a branch thereof, for treatment and rehabilitation, and he shall give notice to the prisoner or to his parents, spouse, issue, next of kin, guardian, or next friend, if it appears to the district attorney that such prisoner is incapable of conducting his contest to the report. The court may require such further notice as it deems necessary to protect the interest of the prisoner, may continue the hearing pending such notice and may appoint a guardian ad litem, if necessary. The hearing shall be conducted in the manner described in section five."

At the commencement of the hearing, counsel for the defendant requested that the court order that Knowlton be examined to determine whether Knowlton was "competent today to go through these proceedings in an appropriate fashion." In support of this request, counsel for the defendant outlined for the court Knowlton's history of schizophrenia, his virtually constant institutionalization since childhood for mental illness, and "the way he appears to me today."

The judge did not rule on the defendant's request, but proceeded with the SDP hearing in order "to get the background of the case." The only witnesses who testified at the hearing were the two psychiatrists who had examined Knowlton at the treatment center and a probation officer from the Superior Court for Middlesex County. The defendant called no witnesses.

During the course of the hearing, each of the psychiatrists who had examined Knowlton at the treatment center testified that Knowlton suffered from schizophrenia. However, both psychiatrists stated that they were unable to determine if the defendant's schizophrenia were presently "active" because neither had examined Knowlton on the day of the SDP hearing.

At the conclusion of the SDP hearing, counsel for the defendant repeated his position that "there is a serious question here about whether or not he [Knowlton] is competent to go through these proceedings today." Once again, the judge made no ruling on the issue of a competency hearing, but took the entire matter under advisement.

On April 12, 1978, the judge found the defendant to be an SDP under the terms of G. L. c. 123A, § 1.[3] He ordered

---

[3] The term "sexually dangerous person" is defined as "[a]ny person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or

the defendant committed to the treatment center for a period of from one day to life. See G. L. c. 123A, § 6.

On appeal, the defendant argues only one issue. He maintains that on the day of the SDP hearing there was serious question as to his competence to proceed. Therefore, he claims that a competency hearing prior to any further proceedings was constitutionally compelled.[4]

The Commonwealth "agrees with the defendant that there were sufficient facts known to the judge, or brought to his attention during the hearing, to raise the question of the defendant's competency at the time of the hearing." The Commonwealth further agrees that "on these facts, a hearing on competency would have been required in a criminal prosecution." See *Commonwealth* v. *Hill*, 375 Mass. 50, 57-58 (1978). However, the Commonwealth argues that in SDP proceedings under G. L. c. 123A, a defendant's competence is not relevant and thus the judge had no obligation to conduct a hearing as to Knowlton's competence prior to determining that Knowlton was a sexually dangerous person. We do not agree.

General Laws c. 123A is a comprehensive legislative program designed to identify and treat sexually dangerous persons. The statute was enacted "with the dual aims of protecting the public against future antisocial behavior by the offender, and of doing all that can be done to rehabilitate him." *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 646 (1978). See *Commonwealth* v. *Major*, 354 Mass. 666, 668 (1968), cert. denied, 393 U.S. 1109 (1969);

uncontrollable desires." G. L. c. 123A, § 1, as appearing in St. 1958, c. 646, § 1.

[4] Our conclusion in this case is based on the interpretation and application of G. L. c. 123A, § 6. Therefore, it is unnecessary to consider the defendant's claim that he was constitutionally entitled to a competency hearing prior to any proceeding to determine whether he was a sexually dangerous person. We "will ordinarily 'not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.'" *Fazio* v. *Fazio*, 375 Mass. 394, 405 (1978), quoting from *Commonwealth* v. *Bartlett*, 374 Mass. 744, 748-749 (1978).

*Gomes* v. *Gaughan*, 471 F.2d 794, 800 (1st Cir. 1973). See generally Ross & Hochberg, Constitutional Challenges to the Commitment and Release Procedures under Massachusetts General Laws Chapter 123A, the "Sexually Dangerous Persons" Act, 4 New England J. Prison L. 253, 255 (1978).

Section 6 of G. L. c. 123A details the procedures by which the Commonwealth may act in instances involving prisoners under sentence who appear to be sexually dangerous persons. See note 2, *supra*. See generally *Commonwealth* v. *Childs*, 372 Mass. 25, 28 (1977). Under § 6, once the examining psychiatrists submit to the court a report clearly indicating that the prisoner is an SDP,[5] and once the Commonwealth has filed a petition for the commitment of the prisoner, the court is required to conduct a hearing in order to determine whether the prisoner is a sexually dangerous person.

However, before any hearing may be conducted pursuant to § 6, the Commonwealth must "give notice to the prisoner or to his parents, spouse, issue, next of kin, guardian, or next friend, if it appears to the district attorney that such prisoner is incapable of conducting his contest to the report." Section 6 provides further protection to the prisoner prior to the commencement of the SDP hearing in the Superior Court: "The court may require such further notice as it deems necessary to protect the interest of the prisoner, may continue the hearing pending such notice and may appoint a guardian ad litem, if necessary."

We view the availability of these protective procedures as imposing a corresponding obligation on the judge to determine whether their use is necessary in any particular case. It is well established that "[w]henever genuine question arises in the trial of a cause whether a party to

---

[5] The defendant does not contest the fact that the report of the two psychiatrists in this case contains sufficient information to allow the Commonwealth to proceed with the SDP adjudication.

an action is capable of conducting the litigation by reason
of minority or mental incapacity, it is the duty of the
court to ascertain the fact and in case a finding is made
that such incapacity exists to cause some competent per-
son to be appointed to conduct the litigation." *Sullivan* v.
*Superior Court*, 271 Mass. 435, 437 (1930). See *Welch* v.
*Fox*, 205 Mass. 113, 114 (1910). Cf. *Hermanson* v. *Seppala*,
255 Mass. 607, 611 (1926). Similarly, where a defendant
at the outset of an SDP hearing raises a substantial ques-
tion as to his competence to proceed further we think that
§ 6 requires the judge to protect the defendant's interest
by assessing the defendant's competence before conduct-
ing the SDP hearing itself. Cf. *Commonwealth* v. *Hill*, 375
Mass. 50, 54 (1978); *Commonwealth* v. *Kostka*, 370 Mass.
516, 522 (1976).

Pursuant to § 6, if the judge finds that the defendant is
competent, then of course the SDP hearing will proceed.
On the other hand, if the judge finds the defendant in-
competent, then the judge may utilize any of the proce-
dures available under § 6 in order to protect the rights of
the defendant. The judge may determine that further
notice is necessary to protect the defendant's rights, and
may order the hearing continued pending such notice.
The judge may also decide that the SDP hearing should
be continued in order to determine if it is possible for the
defendant to be restored to competence within a reason-
able period of time.[6] If it does not appear likely that the

---

[6] As the Commonwealth itself suggests, such a continuance would
seem appropriate in cases where there is evidence that the prisoner
suffers from a mental disorder which only intermittently renders him
unable to conduct his contest to the psychiatrists' report. If, for exam-
ple, a prisoner's schizophrenic condiction were "active" at the time of
the SDP hearing and there is evidence that the active condition may
be short-lived, then a continuance may be the most efficient resolution
of the issue. If an examination of the prisoner at the courthouse is not
practicable, see G. L. c. 123, §§ 15, 19, or if after such an examination,
a somewhat more lengthy continuance is deemed advisable, then
G. L. c. 123A, § 6, provides the procedure by which the prisoner may
be temporarily detained pending the resumption of the hearing:

defendant's competence will be restored in the foreseeable future, then the judge may appoint a guardian ad litem to protect the defendant's interests at the SDP hearing.[7] Thus, the statutory terms themselves are sufficient in this case to have required the judge to conduct a hearing into Knowlton's competence.

Further support for the requirements of a competency hearing is also found in the various dispositions available to the judge under § 6 after finding the defendant to be a sexually dangerous person. If the judge finds that the defendant is a sexually dangerous person, the judge may "commit him to the center, or a branch thereof . . . or . . . may commit such person to a mental institution or place him upon out-patient treatment, or make such other disposition upon the recommendation of the department of mental health consistent with the purpose of treatment and rehabilitation." G. L. c. 123A, § 6. See *Commonwealth* v. *Bladsa*, 362 Mass. 539, 542 (1972). Cf. *Commonwealth* v. *Travis*, 372 Mass. 238, 247 n.4 (1977). See generally McGarry & Cotton, A Study in Civil Commitment: The Massachusetts Sexually Dangerous Persons Act, 6 Harv. J. Legis. 263, 282-283 (1969).

Thus the statute suggests a legislative awareness that sexually dangerous individuals may require differing methods of confinement and treatment, depending on their mental condition. The purpose of an SDP hearing is not merely to identify and to confine those found to be sexually dangerous individuals. "[T]he purpose of an SDP

---

"[T]he court may order that the prisoner be retained in the custody of the superintendent of the institution in which the center, or branch thereof, is located or may commit him to the custody of a sheriff or keeper of a jail or place of detention, until such time as the matter is heard on the merits."

[7] If, after a hearing, the judge concludes that it is unlikely that the defendant will become competent in the foreseeable future, the judge may dismiss the proceedings under G. L. c. 123A, and suggest to the Commonwealth, the defendant's attorney and the guardian ad litem that proceedings under G. L. c. 123 appear more appropriate.

hearing is to find the *best* disposition available under the statute" (emphasis supplied). *Commonwealth* v. *Rodriguez, supra* at 646.[8] See *Commonwealth* v. *Bladsa, supra.*

Finally, we reject the Commonwealth's suggestion that proceedings under G. L. c. 123A are "civil" and therefore that the competency safeguards required in criminal prosecutions are unnecessary. The label "civil" or "criminal" on a statute is not determinative of the need for safeguards. Rather, in deciding what safeguards are required, it is necessary to look at the nature of the right which the State seeks to circumscribe. The more precious the right, the greater the protection, whether the proceedings be labelled civil or criminal. See *Commonwealth* v. *Travis,* 372 Mass. 238, 246 (1977); *Andrews, petitioner,* 368 Mass. 468, 487-488 (1975). Accord, *Doe* v. *Doe,* 377 Mass. 272, 280-281 (1979).

In sum, in both the conduct and the disposition of an SDP hearing, the legislation requires that if there is a substantial question as to a defendant's mental competence the judge must hold a hearing to assess the competence of the defendant before proceeding with the SDP hearing.[9] Thus it was error for the judge to determine

---

[8] At the SDP hearing both psychiatrists recommended the defendant's admission to the treatment center. However, both psychiatrists also indicated that if the defendant were in an actively unstable or agitated condition the defendant would fare better in Bridgewater State Hospital than in the treatment center. Both psychiatrists alluded to the role of the Department of Mental Health in approving the transfer of patients from one center to another. The absence of the specific details of the administrative transfer procedure highlights the concern which we expressed in *Rodriguez* that the expertise of the Department of Mental Health should be utilized more extensively in SDP hearings in order to maximize the information available to aid the judge in finding the best disposition under the statute. *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 646 (1978).

[9] It also should be borne in mind that G. L. c. 123, and G. L. c. 123A, afford similar protections. Thus, a commitment under G. L. c. 123A, § 6, must adhere to "all the procedural protections afforded persons subjected to initial observation and final commitment under c. 123." *Andrews, petitioner,* 368 Mass. 468, 483 (1975). See *Fazio* v. *Fazio,* 375

that Knowlton was a sexually dangerous person and commit him to the treatment center for an indeterminate period of from one day to life without first resolving the issue of Knowlton's competence.

The order of the Superior Court committing the defendant to the treatment center for an indeterminate period of from one day to life is reversed. The finding of the Superior Court that the defendant is a sexually dangerous person is vacated, and the case remanded to the Superior Court for further proceedings consistent with this opinion.[10]

*So ordered.*

·

·

Mass. 394, 401 (1978). Cf. *Addington* v. *Texas*, 441 U.S. 418, 429-430 (1979).

[10] We express no opinion as to whether a competency hearing will be required as a precondition to any new SDP hearing involving the defendant. That determination is best left to the sound discretion of the judge below. However, any new hearing conducted pursuant to G. L. c. 123A, § 6, must be based on a current psychiatrist's report regarding the defendant's status. See G. L. c. 123A, § 9. Cf. *Commonwealth* v. *Rodriguez, supra* at 646.