## COMMONWEALTH *vs.* STANLEY A. BARBOZA, JR.

Suffolk.   April 7, 1982. — August 5, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Communication
between patient and psychotherapist, Sex offender, Sexual misbehavior.
*Due Process of Law,* Sex offender. *Constitutional Law,* Sex offender,
Self-incrimination, Double jeopardy, Trial by jury.

In a proceeding under G. L. c. 123A, § 6, for commitment of the respond-
ent as a sexually dangerous person, the testimony of the psychiatrists
who had examined him was properly admitted in evidence after war-
ranted findings by the judge that the respondent had voluntarily and
intelligently waived his patient-psychotherapist privilege.  [108-110]
In a proceeding under G. L. c. 123A, § 6, for commitment of the respond-
ent as a sexually dangerous person, the evidence, including testimony
that the respondent was becoming sexually more aggressive with pas-
sage of time and that the seriousness of his sexual misconduct was in-
creasing, warranted the judge in concluding beyond a reasonable
doubt that the respondent was a sexually dangerous person.  [110]
The respondent in a proceeding for commitment as a sexually dangerous
person under G. L. c. 123A, § 6, had no Federal or State constitutional
right to a trial by jury.  [111-113]
In a proceeding under G. L. c. 123A, § 6, for commitment of the respond-
ent as a sexually dangerous person, the privilege against self-incrimi-
nation guaranteed by the Fifth Amendment to the United States Con-
stitution did not restrict the admission in evidence of his statements to
two psychiatrists.  [113-115]
A person who had been sentenced on a plea of guilty of assault with intent
to commit rape was not subjected to double jeopardy by a subsequent
proceeding under G. L. c. 123A, § 6, for his commitment to a treat-
ment facility as a sexually dangerous person.  [115]
In a proceeding for commitment under G. L. c. 123A, § 6, the respondent
was not denied any right to procedural due process of law.  [115-116]

PETITION for commitment filed in the Superior Court De-
partment on September 9, 1980.

The case was heard by *Dimond,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*John P. Courtney* for the respondent.

*Michael J. Traft,* Assistant District Attorney (*Paul J. McCallum,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

Liacos, J.   On December 11, 1978, the respondent pleaded guilty to an indictment charging assault with intent to rape.   On January 23, 1979, he was sentenced to one year in the Plymouth house of correction.   On motion of the Commonwealth, on April 12, 1979, the respondent was committed to the treatment center at the Massachusetts Correctional Institution, Bridgewater (treatment center), for a period not to exceed sixty days in order to determine if he was a "sexually dangerous person" (SDP).   See G. L. c. 123A, §§ 1 & 6.   Based on a psychiatric report, the Commonwealth filed a motion in the Superior Court seeking to have the respondent committed to the treatment center.   The respondent moved for an independent psychiatric examination.   After a second psychiatric report was filed on June 10, 1980, the Commonwealth filed another petition for commitment pursuant to G. L. c. 123A, § 6.   After a two-day hearing, the judge found, beyond a reasonable doubt, that the respondent was an SDP.   At a further hearing on October 16, 1980, the judge ordered the respondent committed to the treatment center at Bridgewater for a minimum of one day and a maximum of life.   The respondent claimed an appeal.   We transferred the appeal here on our own motion and we now affirm.

The facts adduced at the respondent's two-day commitment hearing are as follows.   The Commonwealth introduced in evidence the transcript of the respondent's December 11, 1978, guilty plea of assault with intent to rape and called as witnesses the two psychiatrists who had examined the respondent pursuant to the petition for commitment. Dr. Moore, a psychiatrist who twice interviewed the respondent, testified that, in his opinion, the respondent was

an SDP. Over objection by defense counsel, Dr. Moore related the basis of his opinion by recounting sexual incidents which had been described to him by the respondent during the course of his interviews.[1]

Dr. Moore concluded that, because the respondent had a history of sexual misbehavior which was gradually becoming more aggressive, the respondent was unable or unwilling to control his sexual impulses, and there was a likelihood of repetition of similar events in the future.

The second psychiatrist, Dr. Levy, had also interviewed the respondent twice and concluded that he was an SDP. Dr. Levy based his opinion on details of sexual incidents described to him by the respondent. The incidents were the same as those described to Dr. Moore. See note 1, *supra.* Dr. Levy concluded that the respondent's sexual thoughts or fantasies had actually developed into aggressive actions against women, and that the respondent felt it necessary to begin to act on what he was feeling.

The respondent presented testimony by a staff psychologist from the treatment center who testified that the respondent had not proved to be any difficulty for others at the treatment center.

The respondent alleges numerous errors. The respondent contends that the judge erred in (1) admitting in evidence statements made by the respondent during the psychiatric examination pursuant to G. L. c. 123A; (2) failing to strike the opinions of both psychiatrists because they were premised on factors beyond the psychiatrists' expertise; and (3) finding the respondent to be an SDP despite insufficient admissible evidence to warrant that finding. The respondent also contends that the order of commitment should be vacated because he was denied the fundamental constitutional

---

[1] The respondent had related to Dr. Moore incidents of voyeuristic behavior as an adolescent. Additionally, while attending college, he would enter women's dormitories through windows and pull the blankets off sleeping women so that he could look at them. The respondent also told Dr. Moore of an assault with intent to rape that he was charged with in Rhode Island.

safeguards of (1) trial by jury, (2) Miranda warnings, (3) protection against double jeopardy, and (4) due process.

1. *Evidentiary issues.* The respondent argues that G. L. c. 233, § 20B, the patient-psychotherapist evidentiary privilege, bars the admission in evidence of all the respondent's statements made during the psychiatric examinations.[2] After the psychiatrists testified that they had informed the respondent that their conversations were not confidential and could be used against him in a proceeding to determine whether he was an SDP, the judge determined that the respondent made an intelligent and voluntary waiver and agreed to speak with the psychiatrists. The judge characterized the respondent's statements as "admissions" and allowed their admission in evidence to explain the basis of the psychiatric conclusion that the respondent was an SDP. There was no error.

When a patient is warned that statements made to a psychiatrist are not privileged, § 20B (*b*) permits a judge to admit the patient's communications in evidence in a proceeding pursuant to G. L. c. 123A. See *Commonwealth* v. *Lamb*, 365 Mass. 265, 266-269 (1974). General Laws c. 233, § 20B (*b*), allows admission of the patient's communications "only on issues involving the patient's mental or emotional

---

[2] General Laws c. 233, § 20B, inserted by St. 1968, c. 418, provides, in pertinent part, that "in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition.
". . . .

"The privilege granted hereunder shall not apply . . . . (*b*) If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental or emotional condition but not as a confession or admission of guilt."

This statute is applicable to court-ordered examinations pursuant to G. L. c. 123A. See *Commonwealth* v. *Lamb*, 365 Mass. 265, 266-269 (1974).

condition but not as a confession or admission of guilt."
G. L. c. 233, § 20B (*b*), inserted by St. 1968, c. 418. The
judge, in the instant case, admitted the statements for pur-
poses relating to the respondent's mental or emotional con-
dition. The proceeding was one to determine whether the
respondent was an SDP, and the judge admitted the psychi-
atrists' testimony of the respondent's communications for
the purpose of learning the basis of the expert opinions. The
evidence was helpful to the judge in evaluating the psychia-
trists' testimony.[3] This was not a proceeding in which a de-
fendant was on trial for criminal charges and thus cases
such as *Blaisdell* v. *Commonwealth,* 372 Mass. 753 (1977),
and *Commonwealth* v. *O'Connor,* 7 Mass. App. Ct. 314
(1979), are inapplicable.[4]

Although we have not considered c. 123A proceedings to
be criminal in nature, we have concluded that, because the
liberty interests of a respondent are at stake, a respondent is
"entitled to the benefit of the same stringent standard of
proof as that required in criminal cases." *Andrews, peti-
tioner,* 368 Mass. 468, 488 (1975). The respondent con-
tends that there was insufficient evidence for the judge to
have concluded beyond a reasonable doubt that the respond-

---

[3] General Laws c. 123A, § 5, as appearing in St. 1958, c. 646, § 1, pro-
vides that "it shall be competent to introduce evidence of the person's past
criminal and psychiatric record *and any other evidence* that tends to indi-
cate that he is a sexually dangerous person" (emphasis added). Although
this section does not authorize the "admission of otherwise inadmissible
evidence," *Commonwealth* v. *Bladsa,* 362 Mass. 539, 541 (1972), the
statement of a party to a proceeding, i.e., an "admission," is an exception
to the hearsay rule and thus is admissible. See 4 J. Wigmore, Evidence
§ 1048 (Chadbourn rev. 1972).

[4] The respondent argues also that the opinions of the psychiatrists
should have been struck because (a) such opinions were based on inadmis-
sible evidence (respondent's statements), and (b) such opinions were based
on factors outside the area of their professional competency. The first
part of this claim is concluded by our determination that the respondent's
statements were properly admitted. As to the second, the record shows no
indication of a challenge to the competency of the psychiatrists; nor does
it appear that they based their opinions on matters outside their com-
petency.

ent was an SDP. Thus, our task on appellate review of an insufficient evidence claim is similar to the review of a denial of a motion for a required finding of not guilty. We "determine whether the record evidence could reasonably support a finding . . . beyond a reasonable doubt" that the respondent is an SDP. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318 (1979).

The testifying psychiatrists concluded, on the basis of the respondent's past, present, and possible future sexual misconduct, that the respondent was an SDP. The respondent did not present evidence to the contrary. The testimony revealed that the respondent was becoming more aggressive with the passage of time, and the seriousness of his sexual misconduct was escalating. Based in part upon the respondent's conviction of assault with intent to rape, Dr. Moore testified that the respondent was unable or unwilling to control his sexual impulses and that there was a likelihood that the respondent would injure someone in the future. Dr. Levy also testified that the respondent's original compulsive thoughts and fantasies had developed into aggressive actions against women and that there was a progressive increase in violence in these offenses. The respondent's history was described as voyeuristic and compulsive.

We think that the judge, on the basis of the above-recited testimony, could have concluded beyond a reasonable doubt that the respondent was an SDP within the meaning of G. L. c. 123A, § 1, and thus there was no error. Cf. *Commonwealth* v. *Lamb*, 372 Mass. 17, 24 (1977).

2. *Constitutional issues.* The respondent maintains that the Commonwealth's petition for commitment must nevertheless be denied because the proceedings under G. L. c. 123A did not provide him with the same constitutional protections that are accorded an accused in a criminal prosecution. The respondent argues that the rights applicable to criminal proceedings, such as a trial by jury, the protection afforded by Miranda warnings, and the right not to be placed twice in jeopardy, must be extended to c. 123A pro-

ceedings under Federal and State constitutional principles. The Commonwealth simply argues that proceedings under c. 123A are civil in nature and thus the rights of the criminal defendant are inapplicable.

We have previously held, and we reiterate the holding today, that whether c. 123A proceedings are labelled civil or criminal does not answer fully what procedural safeguards are required in such proceedings. "Rather, in deciding what safeguards are required, it is necessary to look at the nature of the right which the State seeks to circumscribe. The more precious the right, the greater the protection, whether the proceedings be labelled civil or criminal. See *Commonwealth* v. *Travis*, 372 Mass. 238, 246 (1977); *Andrews, petitioner*, [*supra* at 487-488]. Accord, *Doe* v. *Doe*, 377 Mass. 272, 280-281 (1979)." *Commonwealth* v. *Knowlton*, 378 Mass. 479, 487 (1979). See *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 639 & n.11 (1978). The respondent's right at issue here is the "potential deprivation of liberty" which we once described as "massive." *Commonwealth* v. *Travis, supra* at 249. See also *Lessard* v. *Schmidt*, 349 F. Supp. 1078, 1089 (E.D. Wis. 1972) (discussing social stigma attached to persons involuntarily committed).

*Trial by jury.* The respondent argues that he has a constitutional right to a trial by jury because c. 123A is punitive in nature, and the proceedings thereunder are criminal. We disagree. "General Laws c. 123A is a comprehensive legislative program designed to identify and treat sexually dangerous persons. The statute was enacted 'with the dual aims of protecting the public against future antisocial behavior by the offender, and of doing all that can be done to rehabilitate him.' *Commonwealth* v. *Rodriguez*, [*supra* at 646]." *Commonwealth* v. *Knowlton, supra* at 483. "The statute . . . does not intend punishment and does not in terms impose it, and nothing therein justifies punitive treatment or confinement under any prison conditions, except such as are reasonably required for security. . . . Indeed, implicit in the statute and its purpose is the obligation to provide an environment conducive to a cure or an alleviation

of the dangerous trait" (citations omitted). *Commonwealth v. Major,* 354 Mass. 666, 668 (1968), cert. denied, 393 U.S. 1109 (1969). "Both the Massachusetts court and legislature have made considerable effort to differentiate between the treatment of the sexually dangerous, on the one hand, and the penalizing of criminals on the other." *Gomes* v. *Gaughan,* 471 F.2d 794, 800 (1st Cir. 1973).

Not all the due process procedures applicable in a criminal prosecution for Federal constitutional purposes apply to a c. 123A proceeding. Accord, *Gomes* v. *Gaughan, supra* at 799. Cf. *Specht* v. *Patterson,* 386 U.S. 605, 609-610 (1967). "The Supreme Court has yet to determine if the Sixth Amendment and the full range of rights conferred under decisional law in criminal cases applies to proceedings of this nature" (citation omitted). *Gomes, supra.* Compare *Humphrey* v. *Cady,* 405 U.S. 504, 512 (1972). We decline to extend the Sixth Amendment right to a trial by jury to these proceedings.

The respondent, however, also argues that art. 12 of the Declaration of Rights of the Massachusetts Constitution requires that he be afforded a trial by jury in the c. 123A proceeding.[5] In matters that are noncriminal, art. 12 sets forth applicable principles of substantive and procedural due process of law. See *Commonwealth* v. *One 1972 Chevrolet Van,* 385 Mass. 198, 200 n.1 (1982). The issue is, therefore, whether due process of law under the State Constitution requires a jury trial in this instance. In determining what process is due we have stated that this court "must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs." *Thompson* v. *Commonwealth,* 386 Mass. 811, 817 (1982). As noted earlier, the respondent's liberty interest is at stake, and we recognize the social stigma attached to a person who has been involuntarily committed.

---

[5] Article 12 of the Massachusetts Declaration of Rights provides in part, that "[n]o subject shall be . . . deprived of his . . . liberty . . . but by the judgment of his peers, or the law of the land."

Balancing the interests affected, we conclude that no jury trial was due to the respondent.[6] We perceive no significant protection to be given a respondent in such a proceeding by virtue of a trial by jury. The procedural requirements of G. L. c. 123A provide ample protection of the individual's due process rights. See generally *Andrews, petitioner*, 368 Mass. 468, 481-490 (1975); *Sarzen* v. *Gaughan*, 489 F.2d 1076, 1084-1086 (1st Cir. 1973). In the evaluation of expert testimony, the major fact-finding determination involved in an SDP proceeding, the presence of a jury is not an essential component of accurate fact finding. Compare *McKeiver* v. *Pennsylvania*, 403 U.S. 528, 545-547 (1971). Cf. *Commonwealth* v. *L'Italien*, 352 Mass. 424, 426, cert. denied, 389 U.S. 962 (1967). The community involvement ensured by a jury trial is outweighed, we think, by the possible substantial sacrifice of the State's interest in expedited hearings and the individual's right to privacy.[7]

*Miranda warnings.* As noted in *Commonwealth* v. *Lamb*, 365 Mass. 265, 269 (1974), procedures that must be constitutionally accorded to the respondent in a c. 123A proceeding are not identical to those required for persons accused of crimes. As a matter of constitutional due process, we held, in *Lamb*, that a patient had a right to keep privileged any communications made to a psychotherapist in the course of a court ordered examination "absent a showing that he was informed that the communication would not be privileged and thus, inferentially, that it would be used at the commitment hearing." *Commonwealth* v. *Lamb*, 365 Mass. at 270. The warnings required

---

[6] In the past, we have assumed that proceedings pursuant to G. L. c. 123A required a trial judge to make the factual determinations mandated by the statute. See, e.g., *Commonwealth* v. *McHoul*, 372 Mass. 11, 14-16 (1977); *Commonwealth* v. *Peterson*, 348 Mass. 702, cert. denied, 384 U.S. 909 (1965). The respondent herein does not contend that a jury trial is statutorily required, but only that a jury trial is constitutionally required.

[7] The decision to make a trial by jury a statutory right lies with the Legislature. See *Doremus* v. *Farrell*, 407 F. Supp. 509 (D. Neb. 1975).

by *Lamb* are sufficient to protect the respondent's due process rights in this instance.

We consider whether the Fifth Amendment privilege against self-incrimination, applicable to the States through the Fourteenth Amendment to the Federal Constitution, see *Malloy* v. *Hogan,* 378 U.S. 1, 3 (1964), is implicated in a c. 123A proceeding. Although the privilege against self-incrimination can be claimed in any proceeding, be it civil or criminal, it protects only those disclosures that could be used in criminal prosecutions. *Murphy* v. *Waterfront Comm'n of N.Y. Harbor,* 378 U.S. 52, 94 (1964) (White, J., concurring).[8] As stated earlier in this opinion, we do not view c. 123A proceedings as criminal prosecutions, and thus the Fifth Amendment is not violated by the use of the respondent's statements to his psychiatrists at his c. 123A hearing. See generally *Gomes* v. *Gaughan, supra* at 799. Cf. *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 769 (1977) ("[e]xaminations ordered by the court under G. L. c. 123, § 15, within the constraints of G. L. c. 233, § 23B, properly limited to the issue of competency to stand trial, would not ordinarily involve the problems of privilege . . .").

The defendant relies on *Estelle* v. *Smith,* 451 U.S. 454 (1981), in his claim that the Fifth Amendment privilege against self-incrimination and Miranda warnings are applicable to c. 123A proceedings. The *Estelle* Court held that the use of psychiatric testimony at the sentencing stage of the defendant's criminal prosecution violated the defendant's Fifth Amendment privilege when the defendant did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and of the possible use of his statements against him. The *Estelle* Court noted, *supra* at 467, "[W]hen [the psychiatrist] went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase

---

[8] The defendant does not contend that he was forced to testify against himself at the proceeding, but rather that statements made by him to his psychiatrist were inadmissible at the proceeding because the statements were given in violation of *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest [pretrial] custodial setting." "Just as the Fifth Amendment prevents a criminal defendant from being made 'the deluded instrument of his own conviction,' . . . it protects him as well from being made the 'deluded instrument' of his own execution" (citations omitted). *Estelle, supra* at 462.

The proceeding in the instant case is altogether distinguishable from that in the *Estelle* case. The respondent in *Estelle* was a criminal defendant. His pretrial, postarrest statements were used against him in a phase of his capital murder trial, in the absence of any observation by the State of fundamental constitutional guarantees. No such issues are involved in this case.

*Double jeopardy.* The respondent next contends that he was placed twice in jeopardy because he received two sentences for a single crime. We disagree. The respondent's prison sentence was for the crime of assault with intent to rape, to which he pleaded guilty; his subsequent commitment to the treatment center "resulted from the finding, in a separate proceeding, of sexual dangerousness." *Gomes* v. *Gaughan, supra* at 797. The issues before the court and the evidence presented were entirely different in the two proceedings. See *Commonwealth* v. *Gomes*, 355 Mass. 479, 485-486 (1969), habeas corpus denied sub nom. *Gomes* v. *Gaughan*, 471 F.2d 794 (1st Cir. 1973). See also *Commonwealth* v. *Dagle*, 345 Mass. 539, 539-541 cert. denied, 375 U.S. 863 (1963). Cf. *Commonwealth* v. *Chase*, 385 Mass. 461, 464 n.3 (1982); *Commonwealth* v. *Dias*, 385 Mass. 455, 458 (1982).

*Due process.* The respondent's final argument is that the entire proceeding, pursuant to G. L. c. 123A, denied him the due process safeguards required by the Fourteenth Amendment. The respondent does not point to any procedure required by c. 123A that was not carried out in his proceeding. Rather, the respondent alleges that the petition for commitment that referred to the two psychiatric reports

was vague and gave no substance of the testimony to be elicited at the hearing from any witness. We disagree. Our reading of the record indicates that the respondent was given adequate and timely notice of the c. 123A proceeding. Throughout, the respondent was represented by counsel who cross-examined the Commonwealth's psychiatrists and vigorously argued evidentiary and constitutional points to the judge. We read nothing in the record to indicate that the respondent was denied his right to procedural due process. There was no error.

*Judgment affirmed.*