COMMISSIONER OF MENTAL HEALTH & another[1] *vs.*
ALBERT GAGNE.

Plymouth.    January 10, 1985. — March 28, 1985.

Present: GREANEY, C.J., KASS, & FINE, JJ.

*Sex Offender. Declaratory Relief. Practice, Civil,* Standing.

An action for declaratory relief by the Commissioner of Mental Health and
the Commissioner of Correction, seeking a determination that an inmate
who had been committed pursuant to G. L. c. 123A, § 5, was no longer
a sexually dangerous person, was barred by the plaintiffs' lack of standing
to maintain the action and by the policies implicit in G. L. c. 123A.
[548-551]

CIVIL ACTION commenced in the Superior Court Department
on June 16, 1983.

The case was heard by *Francis W. Keating,* J.

*Harold Robertson* for the defendant.

*Alexander G. Gray, Jr.,* Assistant Attorney General, for the
plaintiffs.

FINE, J. We are presented in this appeal with the question
whether a judge of the Superior Court properly declared, over
the objection of the defendant, Albert Gagne, that he is no
longer a sexually dangerous person.

On June 2, 1980, on a plea of guilty, Gagne was convicted
of two counts of forcible rape of a child, two counts of unnatural
acts on a child under sixteen years of age, and indecent assault
and battery on a child under fourteen years of age. The offenses
involved several separate incidents with an eleven year old
boy. The trial judge, on the recommendation of the district
attorney, pursuant to G. L. c. 123A, § 4, committed Gagne
for a sixty-day observation period to the treatment center for

---

[1] The Commissioner of Correction.

sexually dangerous persons at Bridgewater State Hospital (treatment center). On December 19, 1980, the same judge held a hearing on the recommendations of the two examining psychiatrists, consultants at the treatment center, that Gagne be committed as a sexually dangerous person. The evidence at the 1980 commitment hearing consisted of psychiatric testimony and documentation of Gagne's extensive psychiatric and criminal history. Gagne had been convicted of numerous offenses over a period of more than twenty years, including a conviction of unnatural acts in 1963.[2] He had spent most of his adult life in confinement, having had numerous commitments to Bridgewater State Hospital and to various penal institutions. The judge found Gagne to be a sexually dangerous person and ordered, pursuant to G. L. c. 123A, § 5, that he be committed to the treatment center for a period of one day to life. He also imposed concurrent sentences on Gagne of twenty to thirty, and three to five, years at M.C.I., Walpole.

The present action was brought against Gagne on June 16, 1983, by the Commissioners of Mental Health and Correction. The district attorney who had prosecuted Gagne and had initiated the commitment to the treatment center was not a party. The plaintiffs alleged that, since Gagne's confinement at the treatment center, he had been threatening, assaultive, and generally dangerous and unmanageable, that he was unable to profit from treatment, and that, because the danger Gagne posed did not originate in predominantly sexual problems or express itself in predominantly sexual modes, Gagne was not then a sexually dangerous person. Accordingly, the plaintiffs sought a declaration that Gagne was not a sexually dangerous person and an order that he be returned to the exclusive custody of the Department of Correction. The case was heard by a Superior Court judge other than the judge who had presided over the criminal prosecution and the 1980 G. L. c. 123A commitment hearing. In addition to the documentary evidence

---

[2] According to the probation records in evidence, Gagne was charged with another sex-related offense. In 1976 he was bound over to the Superior Court on charges of rape and assault and battery. No resolution of the charges appears in the record.

which had been admitted at the 1980 hearing and a record of the proceedings at that hearing, there was testimony from Gagne, from Theoharis Seghorn, an administrator of the treatment center who is a clinical psychologist, and from four psychiatrists. The judge ruled that the plaintiffs' action was properly brought as one for declaratory judgment, that the plaintiffs had the burden of proving by a preponderance of the evidence that Gagne was not a sexually dangerous person, and that the burden had been satisfied. We reverse the judge's decision because the plaintiffs lacked standing to obtain declaratory relief with respect to Gagne's sexually dangerous person status. Thus, we need not decide whether the evidence before the judge was sufficient to establish that Gagne was no longer a sexually dangerous person.

The plaintiffs maintain that an actual controversy exists within the meaning of G. L. c. 231A, § 1, as to whether Gagne currently is a sexually dangerous person and that they have standing to raise the issue in an action for declaratory judgment. They are correct as to the existence of an actual controversy. However, the issue of the plaintiffs' standing is a difficult one, requiring some analysis of the statutory scheme, the legislative purpose and the alleged injury. "A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Penal Insts. Commr.* v. *Commissioner of Correction*, 382 Mass. 527, 532 (1981), quoting from *Massachusetts Assn. of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). See *Group Ins. Commn.* v. *Labor Relations Commn.*, 381 Mass. 199, 204-207 (1980); *Holden* v. *Division of Water Pollution Control*, 6 Mass. App. Ct. 423, 428 (1978).

"General Laws c. 123A is a comprehensive legislative program designed to identify and treat sexually dangerous persons." *Commonwealth* v. *Knowlton*, 378 Mass. 479, 483 (1979). The Legislature set forth in G. L. c. 123A a detailed scheme for initially determining and periodically reviewing sexually dangerous person status, with specific roles to be played by particular officials. Yet, there is no provision in that statutory

scheme for either of these plaintiffs, representing essentially the administrative concerns of the treatment center,[3] to raise the issue of the sexually dangerous person status of one in Gagne's situation.

Sections 4 and 6 provide for involuntary commitment[4] to the treatment center.[5] Release of involuntarily-committed sexually dangerous persons is dealt with in § 9. Two agencies have decision making powers: the parole board and the Superior Court. The parole board is required to consider periodically the release on parole of any person who is otherwise eligi-

---

[3] General Laws c. 123A, § 2, as appearing in St. 1959, c. 615, provides: "The commissioner of mental health shall establish and maintain, subject to the jurisdiction of the department of mental health, a treatment center, hereinafter in this chapter called the center, at a correctional institution approved by the commissioner of correction, for the care, custody, treatment and rehabilitation of persons described in section one. The commissioner of correction shall appoint such custodial personnel as may be required for such center. Such custodial personnel shall be subject to the control of the commissioner of mental health with respect to the care, treatment and rehabilitation of persons in their custody, but shall at all times be under the administrative, operational and disciplinary control of the commissioner of correction. The commissioner of mental health shall appoint to such center, in addition to the personnel appointed by the commissioner of correction, adequate personnel for the care, treatment and rehabilitation of such persons committed to their care."

[4] General Laws c. 123A, § 8, as appearing in St. 1958, c. 646, § 1, provides for voluntary admission for: "Any person believing himself to be suffering from a physical or mental condition which may result in sexual trends dangerous to the welfare of the public . . . ."

[5] Section 4 sets forth the procedure for commitment upon conviction of one of a number of enumerated sex-related offenses. Section 6 sets forth the procedure for commitment of persons serving sentences in prison or in the custody of the Department of Youth Services for any type of criminal offense. A petition under § 4 may be brought on the court's own motion or upon motion of the district attorney for the district in which the offense was prosecuted, and a petition under § 6 may be brought on the motion of the district attorney. The commitment proceedings are civil in nature and are conducted in accordance with the procedural requirements of § 5. A commitment must be based upon a report of two psychiatrists clearly indicating that the person is sexually dangerous and before a finding to that effect may be made by the judge he must be convinced beyond a reasonable doubt that the person is sexually dangerous. *Andrews, petitioner*, 368 Mass. 468, 486-490 (1975). The commitment is for an indefinite period lasting from one day to life.

ble for parole. In addition, any committed person may file a petition at least once every year for his release and be heard on that petition in the Superior Court. A copy of the petition seeking release must be sent to the district attorney of the district in which the original proceedings were commenced and to the parole board. The hearing is held in the Superior Court in the district in which the person was committed. The court receives recommendations from the Department of Mental Health and from the parole board. The hearing is conducted consistent with the requirements of § 5, and the petition must be allowed unless the court is convinced beyond a reasonable doubt that the individual continues to be a sexually dangerous person. *Cline, petitioner*, 16 Mass. App. Ct. 958 (1983).

There is no provision in G. L. c. 123A for the Commissioner of Mental Health or the Commissioner of Correction, acting on behalf of the treatment center or otherwise, to obtain the release of a committed individual while he is serving a criminal sentence and so long as he remains ineligible for parole. The plaintiffs argue that this procedural gap may be filled in an appropriate situation by permitting the plaintiff officials in a declaratory judgment action in the Superior Court to seek the release of an inmate to the correctional institution to which he was sentenced. The plaintiffs argue that, in the absence of such a remedy, the continued confinement of persons who are not sexually dangerous results in a waste of the valuable and limited resources of the treatment center.

This argument has some appeal. We recognize, however, that it is beyond our province to rewrite the statute. See *Andrews, petitioner*, 368 Mass. 468, 485 (1975). Cf. *Rogers* v. *Metropolitan Dist. Commn.*, 18 Mass. App. Ct. 337, 339 (1984), and cases cited. Considering the detail with which G. L. c. 123A was written, we think the absence of a remedy for the plaintiffs in § 9 was probably intended by the Legislature. We note that § 9 of G. L. c. 123, the statute dealing with the rights of persons involuntarily committed to mental institutions, which is equivalent to § 9 of G. L. c. 123A, as appearing in St. 1978, c. 367, § 71E, provides specifically that "any person" may apply to the Superior Court for a patient's

release. For a discussion of the relationship between the procedures contained in G. L. c. 123 and G. L. c. 123A, see *Andrews, petitioner*, 368 Mass. at 478-486. Moreover, we think the absence of a remedy for the plaintiffs is consistent with the statutory scheme. It must be kept in mind that the plaintiffs, if successful in such cases, would achieve not only the return of the committed person to prison but also the removal of that aspect of the sexually dangerous person commitment which authorizes the separation of the committed person from society for a period up to the length of his natural life. It would also effectively terminate that person's opportunity to receive treatment. Upon completion of whatever sentence he is serving, he would have the right to be released without any restrictions or treatment.

The justification for removing a sexually dangerous person from society for an indefinite period "lies in assuring the safety of the general public as well as the . . . welfare of the dangerous person." *Newton, petitioner*, 357 Mass. 346, 351 (1970). See also *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 646 (1978); *Commonwealth* v. *Knowlton*, 378 Mass. at 483. In determining whether to release an individual from sexually dangerous person status, the statute provides that the district attorney who prosecuted him and the parole board be notified and heard. Failure to provide the district attorney with the required notice has been viewed as a matter of significance. See *Trimmer, petitioner*, 375 Mass. 588, 591 (1978). The district attorney and the parole board have as their principal functions the protection of the public's safety. See ABA, Standards for Criminal Justice § 3-1.1 (2d ed. 1982) (district attorney); 3 Torcia, Wharton's Criminal Procedure § 419 (12th ed. 1975) (district attorney); G. L. c. 127, § 130, as appearing in St. 1980, c. 155, § 2 (parole board).

The plaintiffs, on the other hand, are officials who have responsibility for operating the treatment center, and their concerns are primarily administrative in nature. They cannot be expected to have the incentive to advocate the interests of public safety. In fact, their administrative concerns, while understandable and compelling, might often be expected to run

counter to the public protection objectives of G. L. c. 123A. The injury the plaintiffs allege, a threat to the security of the treatment center, is not within the area of concern of the statutory scheme of G. L. c. 123A. Furthermore, the "statutory rights on which [they] depend clearly belong to the inmates in [their] care." *Penal Insts. Commr.* v. *Commissioner of Correction*, 382 Mass. at 532. Thus, we conclude that the plaintiffs who brought this action lacked standing, both in the traditional sense that they lacked a cognizable interest in the subject matter of the dispute and in the sense that G. L. c. 123A, by implication, precludes affording them the relief they seek.

We would be less concerned if it were the district attorney for the district in which the defendant was convicted seeking the relief, or if he had been joined as a party. There is no indication that the district attorney even received notice of the proceedings. Moreover, remedies may be available to the treatment center staff in dealing with an unmanageable inmate other than the remedy, with the possible adverse consequences to the public safety to which we have alluded, of having that person's status as a sexually dangerous person altered.

The judgment is reversed, and a new judgment is to be entered which dismisses the action.

*So ordered.*